**TEXAS INTEGRATED CONVEYOR SYSTEMS, INC., Appellant**

v.

**INNOVATIVE CONVEYOR CONCEPTS, INC., Gregory Scott Terry, Michael Todd Terry, and David Batchelder, Appellees.**

No. 05–08–00654–CV.

Court of Appeals of Texas, Dallas.

Oct. 6, 2009.

Jonathan M. LeBlanc, The LeBlanc Law Firm, Dallas, TX, for Appellant.

Harold Dean Jones, Jessica R. Brown, Law Offices of Anderson and Jones, PLLC, Dallas, TX, for Appellee.

Before Justices RICHTER, LANG, and MURPHY.

## OPINION ON MOTION FOR REHEARING

Opinion By Justice LANG.

On August 27, 2009, this Court issued an opinion affirming in part, reversing in part, and vacating in part the trial court's judgment and remanding this case to the trial court for further proceedings consistent with that opinion. Appellees Innovative Conveyor Concepts, Inc., Gregory Scott Terry, Michael Todd Terry, and David Batchelder (collectively, the "Innovative Conveyor defendants") filed a motion for rehearing on September 14, 2009.[1] We deny the Innovative Conveyor defendants' motion for rehearing. In addition, we withdraw our August 27, 2009 opinion and vacate the judgment of that date. This is now the opinion of the Court.

This case involves claims asserted by an employer, Texas Integrated Conveyor Systems, Inc. ("Texas Integrated"), against its former employees and others for, *inter alia,* breach of a non-compete agreement, misappropriation of trade secrets, and fraud. Texas Integrated, a subsidiary of American Conveyor Group, appeals the trial court's order granting the motions of the Innovative Conveyor defendants for traditional and no-evidence summary judgment dismissing Texas Integrated's claims and order denying Texas Integrated's motion for new trial. Additionally, Texas Integrated appeals the trial court's order imposing sanctions and order denying its motion to reconsider and vacate that order.

In five issues, Texas Integrated argues the trial court erred when it: (1) denied

---

1. The Innovative Conveyor defendants' motion for rehearing was postmarked September 11, 2009.

Texas Integrated's motion for new trial because Texas Integrated had no notice the hearing on the no-evidence motions for summary judgment had been changed or canceled; (2) denied Texas Integrated's motion for new trial without considering the timely filed new evidence; (3) granted the Innovative Conveyor defendants' motions for traditional summary judgment because Texas Integrated raised genuine issues of material fact; (4) granted the Innovative Conveyor defendants' motions for no-evidence summary judgment because Texas Integrated presented more than a scintilla of evidence supporting each of its causes of action; and (5) imposed sanctions against Texas Integrated and denied its motion to reconsider or vacate the order imposing sanctions.

We conclude the trial court erred when it denied Texas Integrated's motion for new trial as to the Innovative Conveyor defendants' motions for no-evidence summary judgment because Texas Integrated was denied due process as to those motions. In addition, we conclude the trial court properly granted the motion of Innovative Conveyor for traditional summary judgment as to the claim of civil conspiracy against it, but erred in granting the motions of the Integrated Conveyor defendants for traditional summary judgment as to all other claims. Finally, we conclude the trial court abused its discretion when it imposed the discovery sanctions at issue against Texas Integrated. As described in detail below, the trial court's judgment is affirmed in part, reversed in part, and vacated in part, and this case is remanded to the trial court for further proceedings consistent with this opinion.

## I. PROCEDURAL BACKGROUND

The Innovative Conveyor defendants filed a total of eight motions for summary judgment, four seeking no-evidence sum-mary judgment and four seeking traditional summary judgment. The four motions for no-evidence summary judgment state they were based on Texas Integrated's petition that was filed in February 2007. The four motions for traditional summary judgment state they were based on Texas Integrated's second amended petition that was filed on July 25, 2007. Neither Texas Integrated's February 2007 petition nor its second amended original petition is in the clerk's record. The only petition of Texas Integrated in the record is its December 10, 2007 fourth amended original petition. In that petition, Texas Integrated alleges an array of claims against, among others, the Innovative Conveyor defendants, and seeks a permanent injunction, damages, and attorneys' fees. The Innovative Conveyor defendants' answer is not in the clerk's record.

The Innovative Conveyor defendants' four no-evidence summary judgment motions were filed in July 2007 and were set and reset for hearing on several occasions. The last notice of hearing sent to Texas Integrated was dated January 22, 2008 and provided the four no-evidence motions would be heard March 7, 2008 at 9:30 a.m. The Innovative Conveyor defendants each filed a traditional summary judgment motion pursuant to Texas Rule of Civil Procedure 166a(c) on September 11, 2007. The hearing on those four motions was set for February 8, 2008.

At the time of the February 8, 2008 hearing, the fourth amended original petition was the current pleading. At the commencement of the hearing, the parties advised the trial court the no-evidence summary judgment motions were set for a hearing on March 7, 2008. The trial court told counsel to proceed on the "four motions for summary judgment." However, following the hearing, the trial court

signed an order on February 18, 2008 granting all eight motions for traditional and no-evidence summary judgment. The order specifically dismissed with prejudice the claims of Texas Integrated against the Innovative Conveyor defendants for (1) breach of non-compete agreement, (2) conversion, (3) breach of fiduciary duty, (4) fraud/constructive fraud, (5) misappropriation/theft of trade secrets, (6) tortious interference with existing contracts, (7) tortious interference with prospective contracts, (8) breach of confidentiality agreement, (9) civil conspiracy, (10) misappropriation/theft of funds, (11) unjust enrichment/equitable relief, (12) violations of theft liability act, (13) alter ego, (14) respondeat superior, and (15) permanent injunctive relief. In addition, the order provided that Texas Integrated "take nothing against [the Innovative Conveyor defendants] by its suit," ordered costs taxed against Texas Integrated, and contained a "Mother Hubbard" clause.[2]

As part of our analysis in this matter, we must determine whether the eight motions for summary judgment actually addressed all of the claims asserted by Texas Integrated in its fourth amended original petition. We must compare the claims asserted, the claims addressed in the motions for summary judgment, and the trial court's ruling on the summary judgment motions. Accordingly, to simplify these facts, which would otherwise need to be tediously described in additional numerous paragraphs, we set out below a chart that shows the claims pending against each Innovative Conveyor defendant at the time of the February 8, 2008 hearing.[3] In the chart, (1) the claims for which each Innovative Conveyor defendant sought no-evidence summary judgment are indicated with an "N," (2) the claims for which each Innovative Conveyor defendant sought traditional summary judgment pursuant to rule 166a(c) are indicated with a "T," and (3) the claims on which the trial court expressly granted summary judgment are indicated with an "X."

**2.** *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 198 (Tex.2001) (simple statement in judgment that all relief not expressly granted is denied is denominated as "Mother Hubbard" clause).

**3.** In listing the claims contained in the fourth amended original petition, we note some claims are described using a slash mark or solidus: "fraud/constructive fraud," "misappropriation/theft of trade secrets," "misappropriation/theft of funds," and "unjust enrichment/equitable relief." A slash mark can be used as a substitute for the words "and" and "per," and to denote alternatives. *See* TEXAS LAW REVIEW MANUAL ON USAGE, STYLE & EDITING R. 1.42 (10th ed. 2005) (a slash mark may substitute for the word "per"); THE CHICAGO MANUAL OF STYLE R. 6.113, 6.116 (15th ed. 2003) (a slash mark may be used in certain contexts to mean "and" and may stand as a shorthand for "per"); THE REDBOOK: A MANUAL ON LEGAL STYLE R. 1.81(d) (2d ed. 2006) (slash may be used in some paired words to indicate alternatives). A review of all of Texas Integrated's pleadings suggests, because of the language below each claim description in the petition and the varying combinations in which some are addressed in motions and responses, the slash mark was intended to be a substitute for the word "and," denoting two claims that are being pleaded or discussed together. Throughout this opinion, we will use the word "and" rather than a slash mark.

| CLAIM | Parties Against Whom Claim was Asserted in Fourth Amended Original Petition | N= Party sought no-evidence summary judgment on claim<br>T= Party sought summary judgment on claim pursuant to rule 166a(c)<br>X= Trial court expressly granted summary judgment as to claim | | | |
|---|---|---|---|---|---|
| | | Innovative Conveyor | Gregory Terry | Michael Terry | Batchelder |
| 1. Breach of Non-Compete Agreement | Gregory and Michael Terry; Batchelder | N, X | N, T, X | N, T, X | N, X |
| 2. Conversion | Gregory and Michael Terry; Batchelder | N, X | N, T, X | N, T, X | N, T, X |
| 3. Breach of Fiduciary Duty | Gregory and Michael Terry; Batchelder | N, X | N, T, X | N, T, X | N, X |
| 4. Fraud and Constructive Fraud | Gregory and Michael Terry; Batchelder | N, X | N, T, X | N, T, X | N, T, X |
| 5. Misappropriation and Theft of Trade Secrets | Gregory and Michael Terry; Batchelder | N, X | N, T, X | N, T, X | N, X |
| 6. Tortious Interference with Existing Contracts | Gregory and Michael Terry; Batchelder | N, X | N, T, X | N, T, X | N, T, X |
| 7. Tortious Interference with Prospective Contracts | Gregory and Michael Terry; Batchelder | N, X | N, T, X | N, T, X | N, T, X |
| 8. Breach of Confidentiality Agreement | Gregory and Michael Terry; Batchelder | X | T, X | T, X | X |
| 9. Civil Conspiracy | Gregory and Michael Terry; Batchelder; Innovative Conveyor | N, T, X | N, T, X | N, T, X | N, T, X |
| 10. Misappropriation and Theft of Funds | Gregory and Michael Terry; Batchelder | N, X | N, X | N, X | N, T, X |
| 11. Violations of Texas Theft Liability Act | Gregory and Michael Terry; Batchelder | N, X | N, T, X | N, T, X | N, T, X |
| 12. Aiding and Abetting | Gregory and Michael Terry; Batchelder; Innovative Conveyor | | | | |
| 13. Unjust Enrichment | Gregory and Michael Terry; Batchelder; Innovative Conveyor | N, X | N, T, X | N, T, X | N, T, X |
| 14. Alter Ego | Gregory and Michael Terry | N, X | X | X | X |
| 15. Equitable Relief | Gregory and Michael Terry | X | X | X | X |
| 16. Respondeat Superior | Gregory and Michael Terry; Batchelder; Innovative Conveyor | N, T, X | X | X | X |

Texas Integrated filed a joint response to all eight motions for summary judgment, which was before the trial court at the time of the February 8, 2008 hearing. Texas Integrated also filed a second supplemental response to the no-evidence motions on February 26, 2008. Such filing would have been timely for the hearing scheduled for March 7, 2008.

After the trial court signed the February 18, 2008 order granting judgment for all of the Innovative Conveyor defendants, Texas Integrated filed a motion for new trial on March 14, 2008 based on the following "points of error": (1) Texas Inte-

grated did not receive notice the scheduled March 7, 2008 hearing on the no-evidence motions had been canceled or changed, (2) the trial court's granting of the Innovative Conveyor defendants' motions for traditional summary judgment constituted reversible error because an issue of fact was created by Texas Integrated's responses to those motions and movants were not entitled to judgment as a matter of law, (3) the trial court's granting of the Innovative Conveyor defendants' motions for no-evidence summary judgment constituted reversible error because Texas Integrated presented more than a scintilla of evidence to defeat those motions, (4) the trial court's granting of the Innovative Conveyor defendants' motions for no-evidence summary judgment constituted reversible error because the trial court did not consider new evidence that was timely filed by Texas Integrated, and (5) the trial court's issuing of the order as to sanctions was an abuse of discretion and contrary to current Texas law. Following an April 9, 2008 hearing on Texas Integrated's motion for new trial, the trial court signed an order on April 14, 2008, denying the motion. The trial court did not specify the grounds for denial.

During the discovery phase and prior to the motions for summary judgment, the Innovative Conveyor defendants filed a motion seeking the imposition of sanctions against Texas Integrated for abuse of the discovery process. After a hearing, the trial judge for the 101st District Court of Dallas County granted the motion. Subsequent to that order, Texas Integrated filed its second motion seeking recusal of the trial judge for the 101st District Court, alleging ex parte communications with counsel for the Innovative Conveyor defendants and reliance on extrajudicial sources to formulate opinions as to the merits of Texas Integrated's claims. The trial judge for the 101st District Court recused himself from the case. Then, Texas Integrated filed a motion to reconsider or vacate the order imposing sanctions, which the trial judge for the 160th District Court denied.

## II. JURISDICTION

After reviewing the record, this Court questioned its jurisdiction over the appeal because the trial court's order granting traditional and no-evidence summary judgment did not appear to dispose of all claims and all parties. As requested, Texas Integrated filed a supplemental clerk's record and the parties filed supplemental letter briefs on jurisdiction. All parties argue the trial court's order granting summary judgment was a final, appealable order.

### A. Standard of Review

An appellate court is obligated to review *sua sponte* issues affecting its jurisdiction. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex.2004); *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 735 (Tex.App.-Dallas 2007, pet. denied). Appellate jurisdiction is never presumed. *See Parks v. DeWitt County Elec. Co-op., Inc.*, 112 S.W.3d 157, 160 (Tex.App.-Corpus Christi 2003, no pet.). An appellate court reviews de novo whether it has jurisdiction over an appeal because jurisdiction is a legal question. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998); *OAIC*, 234 S.W.3d at 735. If the record does not affirmatively demonstrate the appellate court's jurisdiction, the appeal must be dismissed. *See IFS Sec. Group, Inc. v. Am. Equity Ins. Co.*, 175 S.W.3d 560, 562 (Tex.App.-Dallas 2005, no pet.).

### B. Applicable Law

An appeal may be taken only from a final judgment, unless a statute

specially authorizes an interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 51.012, 51.014(a) (Vernon 1997 & Supp. 2007); *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001). Although the trial court and the parties may have presumed all claims and parties were disposed of, an appellate court cannot speculate as to the intended disposition of any remaining claims. *See Sw. Invs. Diversified, Inc. v. Estate of Mieszkuc*, 171 S.W.3d 461, 469 (Tex.App.-Houston [14th Dist.] 2005, no pet.). A judgment issued without a conventional trial on the merits is final for purposes of appeal if it: (1) actually disposes of all claims and all parties before the court; or (2) states with unmistakable clarity it is a final judgment as to all claims and all parties. *Lehmann*, 39 S.W.3d at 192.

██ To determine whether an order actually disposes of all pending claims and parties, it is necessary for the courts of appeals to look to the record of the case. *See id.* at 205–06. If the record reveals the existence of parties or claims not mentioned in the order, the order is not final. *Id.* at 206. An order does not dispose of all claims and all parties merely because it is entitled "final," uses the word "final" in the order, awards costs, or states that it is appealable. *Id.* at 205.

██ However, the language of an order or judgment can make it final, even though it should have been interlocutory, if that language expressly disposes of all claims and all parties. *Id.* at 200. The intent to finally dispose of the case must be unequivocally expressed in the words of the order itself. *Id.* An order that expressly disposes of the entire case is not interlocutory merely because the record fails to show an adequate motion or other legal basis for the disposition. *Id.* at 200, 206. Granting more relief than the movant is entitled to makes the order revers-

ible, but it is not, for that reason alone, interlocutory. *Id.* at 200, 204. If the language of an order is clear and unequivocal, it must be given effect despite any other indications that one or more parties did not intend for the judgment to be final. *Id.* at 206. When a defendant moves for summary judgment on only some of the multiple claims asserted, and the trial court grants the motion for summary judgment, without stating the grounds, and orders that the plaintiff take nothing, that judgment is erroneous, but final. *See Jacobs v. Satterwhite*, 65 S.W.3d 653, 655–56 (Tex.2001).

### C. Summary Judgment Did Not Actually Dispose of All Claims

██ First, we address whether the trial court's order granting summary judgment actually disposed of all claims. Both parties argue the trial court's order actually disposed of all claims. To determine whether the trial court's order actually disposed of all claims, we must compare the last-filed, live pleading in the record with the motions for summary judgment. The Innovative Conveyor defendants contend Texas Integrated's fourth amended original petition is void as a matter of law because that petition was filed after the August 9, 2007 deadline in the trial court's scheduling order. However, the scheduling order is not in the clerk's record. Also, there is nothing in the record showing the Innovative Conveyor defendants objected to Texas Integrated's fourth amended original petition or that the fourth amended original petition was stricken by the trial court.

The record shows the trial court's order granting summary judgment stated that "[The Innovative Conveyor defendants'] motions for Summary Judgment should be granted" and expressly specified which of

Texas Integrated's claims were being dismissed. However, the trial court's order did not state it was dismissing Texas Integrated's claims alleging the Innovative Conveyor defendants aided and abetted "in the commission of fraud, breach of fiduciary duties, theft, and other allegations made in [the] petition." In addition, the chart above identifies numerous claims that were not addressed in the motions for traditional summary judgment or the motions for no-evidence summary judgment. We conclude the trial court's order does not actually dispose of all claims. However, our inquiry as to finality does not end with that conclusion.

### D. Finality of Summary Judgment

■ Next, we address whether the trial court's order granting traditional and no-evidence summary judgment states with unmistakable clarity it is a final judgment as to all claims and all parties. Texas Integrated argues the take-nothing language in the trial court's order expressed a clear and unambiguous intent to dismiss the lawsuit against the Innovative Conveyor defendants, not just some of the claims. Further, Texas Integrated contends the trial court granted more relief than the Innovative Conveyor defendants were entitled to because they did not move for summary judgment on Texas Integrated's aiding and abetting claims. Texas Integrated maintains this makes the trial court's order erroneous, not interlocutory. Also, Texas Integrated argues the subsequent actions of the trial court and the parties show they intended and treated the trial court's order granting the motions for traditional and no-evidence summary judgment as a final order disposing of all claims brought by Texas Integrated against the Innovative Conveyor defendants.

The record shows the trial court's order granting summary judgment states, in part, "that [Texas Integrated] take nothing against [the Innovative Conveyor defendants] by its suit." The order also taxes all costs against the parties and contains a "Mother Hubbard" clause. The Texas Supreme Court's opinion in *Lehmann* directs that "if a defendant moves for summary judgment on only one of four claims asserted by the plaintiff, but the trial court renders judgment that the plaintiff take nothing on all claims asserted, the judgment is final—erroneous, but final." *See Lehmann*, 39 S.W.3d at 200. Accordingly, we conclude the trial court's order stating that Texas Integrated take nothing on its suit is a final, although erroneous, order as to all claims against the Innovative Conveyor defendants.

### III. NOTICE OF HEARING ON NO-EVIDENCE SUMMARY JUDGMENT MOTIONS

In issues one and two, Texas Integrated argues the trial court erred when it denied its motion for new trial because: (1) Texas Integrated had no notice the hearing on the no-evidence motions for summary judgment set for March 7, 2008, had been canceled or changed; and (2) the trial court granted the motions for no-evidence summary judgment without considering the timely filed new evidence in Texas Integrated's second supplemental response to those motions. Texas Integrated contends it was denied its constitutional right to due process when the trial court granted the motions for no-evidence summary judgment before the scheduled hearing.

The Innovative Conveyor defendants respond the trial court heard and decided the motions for traditional and no-evidence summary judgment on February 8, 2008. They contend Texas Integrated had notice of the hearing set for February 8, 2008,

although they do not contend that notice stated the motions for no-evidence summary judgment would be heard at that time. Also, they argue the motions for no-evidence summary judgment were first set for a hearing on August 23, 2007 and reset numerous times so Texas Integrated was not entitled to another twenty-one days notice of the new hearing pursuant to Texas Rule of Civil Procedure 166a. However, they concede some of this history as to the resetting of the motions for summary judgment is not reflected in the record on appeal.

### A. Standard of Review

An appellate court reviews a trial court's ruling on a motion for new trial for an abuse of discretion. *See In re R.R.*, 209 S.W.3d 112, 114 (Tex.2006) (per curiam); *Director, State Employees Workers' Compensation Div. v. Evans*, 889 S.W.2d 266, 268 (Tex.1994). The trial court abuses its discretion when it fails to correctly analyze or apply the law. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding). The test is whether the trial court acted arbitrarily or without reference to any guiding principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex.2004).

### B. Applicable Law

 Although an oral hearing on a motion for summary judgment is not mandatory, notice of hearing or submission of a summary judgment motion is required. *See Martin v. Martin, Martin, & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex.1998). The rules of civil procedure afford the nonmovant twenty-one days' notice before a summary judgment hearing. Tex.R. Civ. P. 166a(c). The nonmovant may "file and serve opposing affidavits or other written response" not later than seven days before the hearing date. *Id.* Without notice of the hearing date, the nonmovant would not know when his response is due. *Whiteside v. Ford Motor Credit Co.*, 220 S.W.3d 191, 194 (Tex.App.-Dallas 2007, no pet.) (citing *Martin*, 989 S.W.2d at 359).

 The Fourteenth Amendment of the United States Constitution protects against deprivation of life, liberty, or property by the State "without due process of law." U.S. Const. amend. XIV, § 1. The Texas Constitution states that no citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the "due course of law of the land." Tex. Const. art. I, § 9. At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *See Campbell v. Stucki*, 220 S.W.3d 562, 570 (Tex.App.-Tyler 2007, no pet.). When a hearing has been scheduled on a motion and the trial court grants that motion before the scheduled hearing date, the trial court violates the non-moving party's procedural due process right to be heard. *See id.* (trial court violated due process where hearing scheduled regarding motion and notice provided, but trial court granted motion before scheduled hearing date); *see also Mosser v. Plano Three Venture*, 893 S.W.2d 8, 13 (Tex.App.-Dallas 1994, no writ) (it would violate due process to require nonmovant, who did not receive actual or constructive notice of summary judgment hearing, to meet *Craddock* requirements to obtain new trial); *Averitt v. Bruton Paint & Floor Co.*, 773 S.W.2d 574, 576 (Tex.App.-Dallas 1989, no writ) (defendant did not appear at hearing on motion to compel discovery and trial court entered default judgment, but trial court abused discretion when it denied defendant's motion for new trial because motion showed defendant did not receive notice of hearing satisfying requirements of *Crad-*

*dock* by establishing his conduct was not intentional or consciously indifferent); *Limestone Constr., Inc. v. Summit Commercial Indus. Props., Inc.,* 143 S.W.3d 538 (Tex.App.-Austin 2004, no pet.) (nonmovant failed to respond or appear at hearing and trial court granted summary judgment, but trial court abused discretion when it denied motion for new trial because nonmovant established it did not receive notice of motion or hearing).

## C. Application of the Law to the Facts

■ The January 22, 2008 notice letter to Texas Integrated stated:

> Please be advised [the Innovative Conveyor defendants'] No–Evidence Motions for Summary Judgment have been scheduled for hearing on March 7, 2008 at 9:30 a.m.

The notice of the hearing on the motions for traditional summary judgment is not included in the record.

At the beginning of the hearing on February 8, 2008, the trial court commented there was some confusion regarding the setting. The trial court noted the docket sheet indicated the February 8, 2008 hearing was set for the motions for no-evidence summary judgment. Counsel for the Innovative Conveyor defendants advised the trial court the hearing was actually on the motions for traditional summary judgment. The record shows there were four motions for traditional summary judgment and four motions for no-evidence summary judgment. The trial court told counsel to proceed on the "four motions for summary judgment."

On February 18, 2008, the trial court signed an "Order on [the Innovative Conveyor defendants'] Traditional and No[-]Evidence Motions for Summary Judgment," listing the numerous motions before it and granting all of the Innovative Conveyor defendants' motions for traditional and no-evidence summary judgment. The trial court specifically dismissed Texas Integrated's claims as listed above in this opinion and ordered that Texas Integrated take nothing against the Innovative Conveyor defendants by its suit. On February 26, 2008, Texas Integrated filed a second supplemental response to the motions for no-evidence summary judgment that would have been timely for the hearing scheduled for March 7, 2008.

Texas Integrated does not dispute it had notice the hearing on the motions for no-evidence summary judgment was set for March 7, 2008. Pursuant to rule 166a(c) of the Texas Rules of Civil Procedure, Texas Integrated could "file and serve opposing affidavits or other written response" with regard to those motions not later than seven days prior to that date. Tex.R. Civ. P. 166a(c). However, the trial court signed an order granting those motions on February 18, 2008, before the date Texas Integrated's response was due and the scheduled March 7, 2008 hearing. Because Texas Integrated had no notice those motions would be heard on February 8, 2008, rather than the scheduled date of March 7, 2008, it did not receive a reasonable opportunity to present its second supplemental response. *Cf. Whiteside,* 220 S.W.3d at 194–95 (appellant's due process rights were satisfied where he received reasonable opportunity to present his written response and evidence). We conclude Texas Integrated was denied fundamental due process when the trial court signed an order granting the motions for no-evidence summary judgment, because it was deprived of notice and an opportunity to be heard at a meaningful time and in a meaningful manner on those motions. *See Campbell,* 220 S.W.3d at 570; *see also Peralta v. Heights Med. Ctr., Inc.,* 485 U.S. 80, 86–87, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988) (holding harm analysis not re-

quired for reversal in case where party was "deprived of property in a manner contrary to the most basic tenets of due process"). Accordingly, we conclude the trial court erred when it denied Texas Integrated's motion for new trial as to the motions for no-evidence summary judgment.

Issue one is decided in favor of Texas Integrated. Based on our resolution of issue one, we need not address issues two or four.

## IV. MOTIONS FOR TRADITIONAL SUMMARY JUDGMENT

In issue three, Texas Integrated argues the trial court erred when it granted the Innovative Conveyor defendants' motions for traditional summary judgment because Texas Integrated raised genuine issues of material fact. The motions of Gregory Terry and Michael Terry ("the Terrys") for traditional summary judgment are nearly identical, so we will address those motions together. Because Innovative Conveyor and Batchelder each filed separate motions for traditional summary judgment that are not identical in all respects, we will address Texas Integrated's third issue separately as to each.

### A. Standard of Review

The standard for reviewing a traditional summary judgment is well-established. *See Sysco Food Servs. v. Trapnell,* 890 S.W.2d 796, 800 (Tex.1994); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *First Union Nat'l Bank v. Richmont Capital Partners I, L.P.,* 168 S.W.3d 917, 923 (Tex.App.-Dallas 2005, no pet.). An appellate court reviews a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Provident Life & Acc. Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003); *First Union,* 168 S.W.3d

at 923. When reviewing a motion for summary judgment, the appellate court takes the nonmovant's evidence as true, indulges every reasonable inference in favor of the nonmovant, and resolves all doubts in favor of the nonmovant. *Provident Life,* 128 S.W.3d at 215; *First Union,* 168 S.W.3d at 923. When a trial court's order does not specify the grounds for its summary judgment, an appellate court must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life,* 128 S.W.3d at 216; *First Union,* 168 S.W.3d at 923.

▮▮▮▮▮▮ Because a summary judgment is a summary trial of a claim, our rules and law require that a party may secure a summary judgment only on those grounds specifically named and discussed in the motion. *See Wright v. Sydow,* 173 S.W.3d 534, 554 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (citing *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 342 (Tex.1993)). This is a notice requirement, intended to notify the claimant and the trial court of those claims or elements of claims the opponent is attacking. *See id.* A trial court can enter a summary judgment only against those claims attacked in a motion for summary judgment. *See id.*

### B. Applicable Law Respecting Texas Integrated's Claims

#### 1. Conversion

▮▮▮▮▮▮ Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 447 (Tex.1971); *Khorshid, Inc. v. Christian,* 257 S.W.3d 748, 758–59 (Tex. App.-Dallas 2008, no pet.). To establish a

claim for conversion, a plaintiff must prove that: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Khorshid, Inc.*, 257 S.W.3d at 759.

### 2. Theft and Texas Theft Liability Act

Texas Integrated's claims for misappropriation and theft of funds appear to be a basis on which it believes the Texas Theft Liability Act was violated. Pursuant to the Texas Theft Liability Act, a person who commits theft is liable for the damages resulting from the theft. TEX. CIV. PRAC. & REM.CODE ANN. § 134.003(a) (Vernon 2005). Theft is defined as "unlawfully appropriating property or unlawfully obtaining services as described by sections 31.03–31.07, or 31.11–31.14 of the Texas Penal Code." *Id.* § 134.002(a); *see also* TEX. PENAL CODE ANN. §§ 31.03 (theft), 31.04 (theft of service), 31.05 (theft of trade secrets), 31.06 (presumption of theft · by check), 31.07 (unauthorized use of a vehicle), 31.11 (tampering with identification numbers), 31.12 (theft of or tampering with multichannel video or information services), 31.13 (manufacture, distribution, or advertisement of multichannel video or information services device), 31.14 (sale or lease of multichannel video or information services device) (Vernon 2003 & Supp. 2008). Section 31.03(a) of the Texas Penal Code provides that a person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(a). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1).

### 3. Fraud and Constructive Fraud

The elements of fraud are: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made the statement recklessly without any knowledge of the truth; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *See Formosa Plastics Corp. USA v. Presidio Eng's & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998). Fraud by nondisclosure is a subcategory of fraud. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). In traditional or actual fraud, there must be fraudulent intent. *See Barnett v. Barnett*, 67 S.W.3d 107, 126 (Tex.2001). However, in constructive fraud the actor's intent is irrelevant. *See id.* Constructive fraud encompasses those breaches that the law condemns as fraudulent merely because they tend to deceive others, violate confidences, or cause injury to public interests, the actor's mental state being immaterial. *See In re Estate of Kuykendall*, 206 S.W.3d 766, 770 (Tex.App.-Texarkana 2006, no pet.). Constructive fraud is the breach of a legal or equitable duty which the law declares fraudulent because it violates a fiduciary relationship. *See Zieba v. Martin*, 928 S.W.2d 782, 789 (Tex.App.-Houston [14th Dist.] 1996, no writ).

### 4. Misappropriation of Trade Secrets

Under Texas law, a plaintiff can recover for misappropriation of a trade secret by establishing: (1) a trade secret existed; (2) the trade secret was acquired through a breach of a confidential relationship or was discovered by improper means; (3) the defendant used the trade

secret without the plaintiff's authorization; and (4) the plaintiff suffered damages as a result. *See Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex.App.-Austin 2004, pet. denied). A trade secret is any formula, pattern, device, or compilation of information, which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it. *In re Bass*, 113 S.W.3d 735, 739 (Tex.2003) (orig. proceeding); *Global Water Group, Inc. v. Atchley*, 244 S.W.3d 924, 928 (Tex. App.-Dallas 2008, pet. denied). Customer lists, pricing information, client information, customer preferences, buyer contacts, blueprints, market strategies, and drawings have all been recognized as trade secrets. *Global Water Group*, 244 S.W.3d at 928.

### 5. Tortious Interference

■■■ The elements of tortious interference with an existing contract are: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex.2000). To prove a cause of action for tortious interference with a prospective contract, a plaintiff must establish the following elements: (1) a reasonable probability that the parties would have entered into a business relationship; (2) an intentional, malicious intervention or an independently tortious or unlawful act performed by the defendant with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct; (3) a lack of privilege or justification for the defendant's actions; and (4) actual harm or damages suffered by the plaintiff as a result of the defen-

dant's interference, i.e., the defendant's actions prevented the relationship from occurring. *See Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 590 (Tex.App.-Austin 2007, pet. denied) (citing *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex.2001) (agreeing with appellate court's analysis of issue)).

### 6. Conspiracy

■■■ To prevail on a conspiracy claim, the plaintiff must prove the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *See Denson v. Dallas County Credit Union*, 262 S.W.3d 846, 851 (Tex.App.-Dallas 2008, no pet.).

### 7. Unjust Enrichment

■■■ Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits. *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex.App.-San Antonio 2004, pet. denied). Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. *Id.* A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992). Unjust enrichment characterizes the result or failure to make restitution of benefits received under such circumstances as to give rise to an implied or quasi-contract to repay. *Villarreal*, 136 S.W.3d at 270. It has also been said that recovery under unjust enrichment is an equitable right and is not dependent on the existence of a wrong. *Id.*

### 8. Respondeat Superior

■ Under the doctrine of respondeat superior, a principal or employer may be vicariously liable for the tortious acts of an agent or employee if the acts are within the course and scope of employment. *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686 (Tex.2007); *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex.1998); *Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 418 (Tex. App.–Dallas 2007, pet. denied).

### C. The Terrys' Motions for Traditional Summary Judgment

The record shows the Terrys did not move for traditional summary judgment on Texas Integrated's claims against them for aiding and abetting "in the commission of fraud, breach of fiduciary duties, theft, and other allegations made in [the] petition," respondeat superior, alter ego, "equitable relief," and misappropriation and theft of funds. Accordingly, the trial court erred when it granted traditional summary judgment as to those claims. *See Wright*, 173 S.W.3d at 554 (trial court can enter summary judgment only on those claims attacked in motion for summary judgment). The portion of issue three in which Texas Integrated argues the trial court erred when it granted traditional summary judgment in favor of the Terrys as to those claims is decided in favor of Texas Integrated.

The Terrys moved for traditional summary judgment on the claims alleging: (1) breach of a non-compete agreement; (2) conversion; (3) breach of fiduciary duty; (4) fraud and constructive fraud; (5) misappropriation and theft of trade secrets; (6) tortious interference with existing contracts; (7) tortious interference with prospective contracts; (8) breach of a confidentiality agreement; (9) civil conspiracy; (10) unjust enrichment; and (11) violations of the Texas Theft Liability Act. As a result, we will address whether the trial court properly granted traditional summary judgment as to each of those claims.

### 1. Conversion, Fraud and Constructive Fraud, Tortious Interference with Existing Contracts, Tortious Interference with Prospective Contracts, Civil Conspiracy, Unjust Enrichment, and Violations of the Texas Theft Liability Act

■ Texas Integrated asserts the Terrys moved for traditional summary judgment on its claims for conversion, fraud and constructive fraud, tortious interference with existing contracts, tortious interference with prospective contracts, civil conspiracy, unjust enrichment, and violations of the Texas Theft Liability Act on the basis they conclusively negated any evidence of a trade secret. However, Texas Integrated contends these claims are not based upon and do not rely on the existence of a trade secret.

The arguments presented in the Terrys' briefs on appeal are different from the basis on which they moved for traditional summary judgment as to these claims. *See* Tex.R.App. P. 33.1(a)(1)(A). Accordingly, we address what was presented to the trial court respecting these motions for traditional summary judgment. In their motions for traditional summary judgment, the Terrys argued Texas Integrated's claims for conversion, fraud and constructive fraud, tortious interference with existing contracts, tortious interference with prospective contracts, civil conspiracy, unjust enrichment, and violations of the Texas Theft Liability Act were essentially causes of action claiming unfair competition and required evidence of a trade secret. They argued they were entitled to traditional summary judgment on these claims because they negated an element of

the claims by demonstrating, as a matter of law, the information could not properly be considered a trade secret. In support of this proposition, the Terrys cited *Parker Barber & Beauty Supply, Inc. v. Wella Corp.*, No. 03–04–00623–CV, 2006 WL 2918571 (Tex.App.-Austin Oct. 11, 2006, no pet.) (mem. op.).

In *Parker*, the Texas Court of Appeals in Austin concluded Parker's claims for misappropriation of proprietary, confidential, and trade secret information, unjust enrichment, unfair competition or misappropriation of time, skill, and money, breach of a confidential relationship, and tortious interference with existing and prospective business relations fell under the umbrella of "unfair competition" regarding the misappropriation of trade secrets. *Id.* at *14 (citing James E. Hudson III, *A Survey of the Texas Unfair–Competition Tort of Common–Law Misappropriation*, 50 BAYLOR L. REV. 921, 923 (1998)). The court noted that the essence of Parker's claims was that Wella knew it would be terminating Parker as its distributor in 1997, yet purposefully obtained as much confidential information as possible to allow Wella to instantly take over the market following the 2001 termination. *Id.* at *2.

This case is distinguishable from *Parker* because the "essence" of Texas Integrated's claims for conversion, fraud and constructive fraud, tortious interference with existing contracts, tortious interference with prospective contracts, civil conspiracy, unjust enrichment, and violations of the Texas Theft Liability Act does not solely involve the acquisition of trade secrets. In its fourth amended original petition, Texas Integrated alleged the Terrys committed conversion when they unlawfully converted monies in the form of compensation or reimbursement paid in 2003 and 2004, physical property, documents, and confi-

dential information for their own benefit without Texas Integrated's consent. Also, Texas Integrated alleged the Terrys committed fraud and constructive fraud when they formed and operated Innovative Conveyor, a competing company, while still employed by Texas Integrated, and used Texas Integrated to help develop their competing company. Texas Integrated asserted the Terrys tortiously interfered with existing and prospective contracts, and identified forty existing or prospective customers it claimed were unlawfully taken. Further, according to Texas Integrated, the Terrys conspired against Texas Integrated to commit fraud, breach of fiduciary duties, theft, and the other allegations in the petition by planning, forming, operating, and contributing to the running of Innovative Conveyor while still employed by Texas Integrated; were unjustly enriched because their secret formation and operation of a competing business, while still employed at Texas Integrated, constituted fraud and took undue advantage of Texas Integrated; and violated the Texas Theft Liability Act by taking monies in the form of compensation and reimbursement, physical property, documents, and confidential information without its effective consent.

In its response and supplemental response to the motions for summary judgment, Texas Integrated stated the elements for each cause of action and discussed evidence it maintained raised an issue of genuine material fact precluding traditional summary judgment as to these claims. We disagree with the contentions of the Terrys and conclude, on this record, evidence of a trade secret is not necessary to prove Texas Integrated's claims alleging conversion, fraud and constructive fraud, tortious interference with existing contracts, tortious interference with prospective contracts, civil conspiracy, un-

just enrichment, and violations of the Texas Theft Liability Act. As a result, the Terry's motions for traditional summary judgment did not address those claims.

Accordingly, the trial court erred when it granted traditional summary judgment in favor of the Terrys as to the claims for conversion, fraud and constructive fraud, tortious interference with existing contracts, tortious interference with prospective contracts, civil conspiracy, unjust enrichment, and violations of the Texas Theft Liability Act. The portion of issue three in which Texas Integrated argues the trial court erred when it granted traditional summary judgment in favor of the Terrys as to these claims is decided in Texas Integrated's favor.

### 2. Misappropriation and Theft of Trade Secrets

■ Texas Integrated acknowledges its claims against the Terrys for misappropriation and theft of trade secrets rely on the existence of a trade secret, but argues it produced evidence raising a genuine issue of material fact, precluding traditional summary judgment. It claims its employee handbook specifically identified customer information as confidential and a trade secret. Also, Texas Integrated contends its customer list is a trade secret because: (1) the customer list was created by Texas Integrated; (2) Texas Integrated is not aware of anyone, other than Innovative Conveyor, who has knowledge of its customer list; (3) Texas Integrated's employees are allowed access to the customer list only to perform their duties; (4) the customer list is kept on a computer and in a file cabinet with access restricted to employees who need the list to perform their duties; (5) the Terrys took the customer list without authorization; and (6) Texas Integrated has been harmed by Innovative

Conveyor's access to its customer list. Texas Integrated agrees a general manufacturing directory is not a trade secret, but argues there is no evidence its customer list was derived from such a directory. The Terrys respond (1) the record shows Texas Integrated did not have a customer list; (2) confidential materials are not necessarily trade secrets; and (3) there is no evidence they used or disclosed a trade secret in violation of a confidential or contractual relationship with Texas Integrated or that there were security measures in place to limit access to that information.

■ To determine whether information constitutes a trade secret, a court considers the following six factors: (1) the extent to which the information is known outside the claimant's business; (2) the extent to which the information is known by employees and others involved in the claimant's business; (3) the extent of the measures taken by the claimant to guard the secrecy of the information; (4) the value of the information to the claimant and to its competitors; (5) the amount of effort or money expended by the claimant in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *In re Bass*, 113 S.W.3d at 739; *Global Water Group*, 244 S.W.3d at 928. A party claiming a trade secret need not satisfy all six factors because trade secrets do not fit neatly into each factor every time. *In re Bass*, 113 S.W.3d at 740; *Global Water Group*, 244 S.W.3d at 928. Further, these six factors are not exhaustive because other circumstances could also be relevant to the trade-secret analysis. *In re Bass*, 113 S.W.3d at 739.

In their motions for traditional summary judgment, the Terrys argued they were entitled to traditional summary judgment because they negated an element of Texas Integrated's claims for misappropri-

ation and theft of trade secrets by demonstrating, as a matter of law, the information could not properly be considered a trade secret, i.e., a trade secret does not exist. They argued the deposition testimony of Keith Mountain, the president of American Conveyor Group and Gregory Terry's former father-in-law, and Lisa McCormick, the vice president of finance and administration for American Conveyor Group and Gregory Terry's ex-wife, precluded the existence of an actual trade secret. Specifically, they claimed, under the six factor test, Mountain's deposition testimony showed: (1) the information was known outside Texas Integrated's business because the job quotes were sent to prospective customers and purchased from a public source; (2) the information Texas Integrated claims are trade secrets was readily available to all employees because Texas Integrated did not restrict access to particular categories of employees, some of the information was proposed by third parties, and once an employee is hired, he may access any document needed to perform his job and there was no distinction between documents; (3) Texas Integrated did not take measures to guard the information its claims is a trade secret because the information was not password protected or marked confidential and customers were not restricted by contract from disclosing the information; (4) the effort or cost to duplicate the information is not great because the information is available in a manufacturing directory that may be purchased for $300 per state; and (5) there is "no evidence" showing the value of the information to Texas Integrated and quotes or purchase orders are of no value; and (6) the information claimed by Texas Integrated to be a trade secret could be easily acquired and duplicated as it was readily available to employees.

In its response, Texas Integrated argued the employee handbook and the de-position testimony and affidavit of Mountain raise a genuine issue of material fact regarding the existence of a trade secret. Under the heading "Confidential Information," the employee handbook defines what it considers confidential information and trade secrets, and establishes policies regarding the disclosure of that information. With regard to trade secrets, it states as follows:

> Employees also must not use or release Company proprietary information or trade secrets without authorization. Trade secrets include all of the Company's confidential or proprietary information. This information includes (without limitation) any Company information encompassed in any reports, investigations, research or development work, mailing lists, bid lists, directories, listings, plans, specifications, proposals, codes, marketing plans, financial projections, cost sheets, bid estimates, bid spreadsheets, vendor and/or subcontractor quotes, financial data, and any and all concepts or ideas, materials, or information related to the business, products, or services of the Company or the Company's customers.

> No employee will use or disclose, either directly or indirectly for his or her benefit or the benefit of another, any of the Company's trade secrets or confidential or proprietary information, whether or not the information is acquired, learned, attained, or developed by the employee or in connection with others. All such trade secrets or confidential information should be sufficiently guarded to protect it from misuse.

Texas Integrated's employee handbook provides that employees are expected to comply with the policies in the handbook. Specifically, it states:

You have been provided with your own personal copy of the employee handbook. As soon as possible, please take a moment to review your handbook. Refer to it whenever you have questions about company policies, practices, or benefits. These policies are effective immediately, and you are expected to know and comply with them accordingly. Upon termination or resignation of employment, you will be asked to return this handbook to your supervisor.

Attached to the Terrys' motions for traditional summary judgment was a copy of the employee handbook with an acknowledgment form signed by "Mike Terry" stating he received a copy of the handbook and understood it was his responsibility to comply with the policies, practices, and rules of employment of the company. Attached to Texas Integrated's response to the motions for traditional summary judgment, was a copy of the employee handbook with an acknowledgment form signed by "Greg Terry" identical to that signed by Michael Terry.

Texas Integrated argued Mountain testified during his deposition that all employees were advised about the confidentiality of the company when they started working for Texas Integrated and he told the Terrys they were dealing with confidential documents when they were hired. Also, Mountain stated Michael Terry wrongfully appropriated quotes provided to customers, purchase orders, documentation for each job, customer profiles, vendor profiles, which included the cost of the products sold, and the selling policy which stated the profit or loss for each quote. Mountain agreed the purchased directory is not Texas Integrated's trade secret, but stated its customer list cannot be obtained except through Texas Integrated and "it's pretty hard" to find a list of hospitals or companies that want conveyors or factories.

Texas Integrated attached to its response Mountain's affidavit which addressed, in detail, among other things, the origin, content, preparation, and availability of the customer list. Also, Mountain stated Texas Integrated relied on repeat business for its success and businesses like Texas Integrated can reasonably expect repeat business from its existing customers.[4]

4. Mountain's affidavit states, in part:

The Texas Integrated customer list was not purchased but was created by Texas Integrated by expending considerable time, [sic] and money, and the creation of such a list was very difficult. The customer list took years to create and cost tens if not hundreds of thousands of dollars over these years to create it. Texas Integrated is not aware of anyone who has knowledge outside of Texas Integrated, except for Defendants, of the contents of Texas Integrated's customer list. Texas Integrated has never produced the customer list to anyone outside the company. Texas Integrated's customer list is not available to the public and can not be obtained from any public or private sources. Employees or employees of its owner of [sic] Texas Integrated were only allowed access to the customer list in order to perform their respective jobs. The Texas Integrated customer list is kept on a computer who's access is restricted to employees who need the list for their job, and to the extent a hard copy of the customer list is kept, it would be kept in a drawer or file cabinet the access to which is restricted to employees who need it for their job. The computers and file cabinets that contain Texas Integrated's customer list are kept in an office that is locked at the close of each business day. If Texas Integrated's competitors were to obtain its customer list, Texas Integrated's business would have been severely harmed. Texas Integrated could not have survived if competitors obtained this list and began to solicit business from its customers....

Their [sic] does exist a lack of competition in the conveyor industry for repeat business from existing customers. Repeat business is [an] integral part of a conveyor business's

In their brief on appeal, the Innovative Conveyor defendants refer to Mountain's affidavit as a "sham affidavit" and comment that it is not admissible summary judgment evidence. The trial court record shows the Terrys and Batchelder filed written objections and a supplement arguing Mountain's affidavit was a sham. In the trial court's order granting traditional and no-evidence summary judgment, the trial court listed these written objections and the supplement as being before the court. The order does not sustain these objections and specifically states all relief not granted in "the motions above named" is denied. Further, the Terrys and Batchelder do not raise a cross-issue on appeal arguing the trial court erred when it denied their objections to Mountain's affidavit. Accordingly, the issues raised as to the "sham" affidavit are not before us. *See* Tex.R.App. P. 47.1 (opinion must address every issue raised and necessary to final disposition).

Indulging every reasonable inference in favor of Texas Integrated, we conclude it raised a genuine issue of material fact as to the existence of a trade secret. Accordingly, we conclude the trial court erred when it granted traditional summary judgment in favor of the Terrys as to the claims for misappropriation and theft of trade secrets. The portion of issue three in which Texas Integrated argues the trial court erred when it granted traditional summary judgment in favor of the Terrys as to the claims for misappropriation and theft of trade secrets is decided in favor of Texas Integrated.

### 3. Breach of Non–Compete Agreement and Breach of Confidentiality Agreement

Texas Integrated argues it raised a material fact issue precluding traditional summary judgment on its claims for breach of a non-compete agreement and breach of a confidentiality agreement because its employee handbook prohibited employees from competing with Texas Integrated and disclosing trade secrets and confidential information while still employed there. Further, Texas Integrated argues, regardless of whether the employee handbook created an enforceable non-compete or confidentiality agreement, the Terrys' motions for traditional summary judgment did not address duties relating to those claims that arise from employment. The Terrys respond they were not parties to a non-compete agreement or a confidentiality agreement and the employee handbook was not an enforceable agreement.

In its fourth amended original petition, Texas Integrated alleged under the headings "Breach of Non–Compete Agreement" and "Breach of Confidentiality Agreement" that the Terrys were required to enter into an agreement not to compete and an agreement not to disclose trade secrets or confidential information *while employed* at Texas Integrated. Texas Integrated claimed such agreements were express and implied, the Terrys were "promissorily estopped" from denying the existence of such agreements, and the Terrys breached such agreements. Further, in its claim for "Breach of Confidentiality Agreement," Texas Integrated asserted "[a]n employee's agreement not to disclose it [sic] employer's trade secrets and confidential information while employed by the employer and after termination is an implied agreement made by every employee and employer as a matter of law."

In their motions for traditional summary judgment, the Terrys argued (1) they were

---

success, and Texas Integrated relied on repeat business for its success. Businesses

like Texas Integrated can reasonably expect repeat business from its existing customers.

at-will employees; (2) as *former employees* they had a general right to engage in competition with a *former employer,* unless there was a covenant not to compete; and (3) as a matter of law, the employee handbook did not create a covenant not to compete or a confidentiality agreement. In its response, Texas Integrated argued (1) there was no dispute as to the at-will status of the Terrys, (2) it did not assert a claim the Terrys breached a traditional covenant not to compete, which takes effect after an employee has left his employment, and (3) its employee handbook did create an enforceable agreement prohibiting employees from competing with their employer and disclosing trade secrets and confidential information while *still employed.* In addition, Texas Integrated stated in the section of its response titled "Breach of Non–Compete and Confidentiality Agreements" that "with regard to trade secrets and confidential information, employees during their employment and after termination are obligated not to divulge their employers' trade secrets even if they are not bound by a confidentiality agreement."

We conclude the Terry's motion for traditional summary judgment did not address Texas Integrated's claims against them alleging breach of a non-compete agreement and breach of a confidentiality agreement while they were employed by Texas Integrated. Accordingly, the trial court erred when it granted traditional summary judgment in favor of the Terrys as to those claims. *See Wright,* 173 S.W.3d at 554 (trial court can enter summary judgment only on those claims attacked in motion for summary judgment). The portion of issue three that argues the trial court erred when it granted traditional summary judgment in favor of the Terrys as to the claims alleging breach of a non-compete agreement and breach of a confidentiality agreement while they were

employed by Texas Integrated is decided in Texas Integrated's favor.

With regard to Texas Integrated's claims against the Terrys for breach of an "implied" confidentiality agreement during the time period after the Terrys were employed by Texas Integrated, the Terrys asserted in their motions for traditional summary judgment that an element of Texas Integrated's cause of action for "breach of confidentiality" is "misuse of a trade secret." According to the Terrys' motions, because Texas Integrated did not establish a genuine issue of material fact as to the existence of a trade secret, summary judgment on Texas Integrated's cause of action for breach of confidentiality was proper. However, we concluded above that Texas Integrated raised a genuine issue of material fact as to the existence of a trade secret. Therefore, the trial court erred when it granted traditional summary judgment in favor of the Terrys as to Texas Integrated's claims against them for breach of a confidentiality agreement during the time period after they were employed by Texas Integrated. The portion of issue three in which Texas Integrated argues the trial court erred when it granted traditional summary judgment in favor of the Terrys as to those claims is decided in favor of Texas Integrated.

### D. Batchelder's Motion for Traditional Summary Judgment

The record shows Batchelder failed to move for traditional summary judgment on Texas Integrated's claims against him for: (1) aiding and abetting "in the commission of fraud, breach of fiduciary duties, theft, and other allegations made in [the] petition"; (2) respondeat superior; (3) breach of a non-compete agreement; (4) breach of fiduciary duty; (5) misappropriation and theft of trade secrets; and (6) breach of a confidentiality agreement. Accordingly,

the trial court erred when it granted traditional summary judgment in favor of Batchelder as to those claims. *See Wright,* 173 S.W.3d at 554 (trial court can enter summary judgment only on those claims attacked in motion for summary judgment). The portion of issue three that argues the trial court erred when it granted traditional summary judgment in favor of Batchelder as to those claims is decided in favor of Texas Integrated.

Batchelder moved for traditional summary judgment on the claims alleging: (1) conversion; (2) fraud and constructive fraud; (3) tortious interference with existing contracts; (4) tortious interference with prospective contracts; (5) civil conspiracy; (6) misappropriation and theft of funds; (7) unjust enrichment; and (8) violations of the Texas Theft Liability Act. Accordingly, we will review whether the trial court erred when it granted summary judgment as to those claims.

### 1. Motion is in Substance a Motion for No–Evidence Summary Judgment

 As a preliminary matter, Batchelder's motion for traditional summary judgment set out the standard for obtaining a traditional summary judgment, but in substance, argued there was no evidence to support Texas Integrated's claims against him. We must determine whether Batchelder's motion for traditional summary judgment is in substance a traditional or no-evidence motion so that we may review it under the proper standard. *See Rodgers v. Weatherspoon,* 141 S.W.3d 342, 344 (Tex.App.-Dallas 2004, no pet.).

 A court should determine the standard of proof on the summary judgment motion after considering the substance of the motion, rather than categorizing the motion strictly by its form or title. *Id.* Summary judgment is proper under a traditional motion when the movant establishes there is no genuine issue of material fact and he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Rodgers,* 141 S.W.3d at 344. A no-evidence summary judgment is proper if the nonmovant fails to bring forward more than a scintilla of probative evidence that raises a genuine issue of material fact as to an essential element of the plaintiff's cause of action for which the defendant contends no evidence exists. Tex.R. Civ. P. 166a(i).

In his motion for "traditional" summary judgment, Batchelder argued he should be granted summary judgment because there was "no evidence," Texas Integrated "has not produced any evidence," and there were "no facts." We conclude Batchelder's motion for traditional summary judgment was in substance a motion for no-evidence summary judgment and will review the motion under the standards that apply to a no-evidence motion.

### 2. Standard for Reviewing No–Evidence Summary Judgment

 The same legal sufficiency standard of review that is applied when reviewing a directed verdict is also applied when reviewing a no-evidence summary judgment. *See RTLC AG Prods., Inc. v. Treatment Equip. Co.,* 195 S.W.3d 824, 829 (Tex.App.-Dallas 2006, no pet.). When reviewing a no-evidence summary judgment, an appellate court must determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *Id.* at 833. An appellate court reviews a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *See Wal–Mart, Stores, Inc. v. Spates,* 186 S.W.3d 566, 568 (Tex.2006) (per curiam)

(citing *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005)); *see also RTLC,* 195 S.W.3d at 829. A reviewing court views all of the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered and disregards all contrary evidence and inferences. *See Merrell Dow Pharm. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997); *see also RTLC,* 195 S.W.3d at 829. A no-evidence summary judgment is improperly granted if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *See RTLC,* 195 S.W.3d at 829. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *See Merrell Dow,* 953 S.W.2d at 711; *see also RTLC,* 195 S.W.3d at 829.

### 3. Conversion, Misappropriation and Theft of Funds, and Violations of the Texas Theft Liability Act

In his motion for "traditional" summary judgment, Batchelder argued he was entitled to summary judgment on Texas Integrated's claims for: (1) conversion, because it is based on alleged conversations with Gregory and Michael Terry and the statute of limitations had expired; (2) misappropriation and theft of funds, because Texas Integrated's unique theory of liability is not supported by the law and intent cannot be relegated to failure to properly perform an employee's job; and (3) violations of the Texas Theft Liability Act, because Texas Integrated "has not alleged any facts or produced any evidence" that Batchelder was involved in the acquisition of the allegedly stolen property. Texas Integrated responded that Batchelder admitted he took a laptop computer, attempted to return some of Texas Integrated's property, and received compensation and reimbursement for the performance of job duties and compliance with company policies.

■■■■■ First, we address Batchelder's claim that the statute of limitations had expired for the claim of conversion. His answer is not in the record on appeal and there is nothing showing he pleaded this affirmative defense. *See* Tex.R. Civ. P. 94. As described above, Batchelder's motion for "traditional" summary judgment was in substance a motion for no-evidence summary judgment. A party may move for no-evidence summary judgment on the ground that no evidence exists to support a defense which an adverse party has the burden to prove at trial. *See* Tex.R. Civ. P. 166a(i); *RTLC,* 195 S.W.3d at 829. However, the affirmative defense of the statute of limitations was Batchelder's burden to prove at trial and he offered no evidence in support of his statute of limitations defense in the motion for summary judgment. In addition, Texas Integrated attached Mountain's affidavit to its response, which states Batchelder's involvement with Innovative Conveyor during his employment with Texas Integrated was not discovered until 2006 and 2007 when documents were produced during the discovery phase of this lawsuit.

■■■■ Second, we address Batchelder's motion for summary judgment as to Texas Integrated's claims for conversion, misappropriation and theft of funds, and violations of the Texas Theft Liability Act. A party may move for no-evidence summary judgment on the ground that no evidence exists to support one or more essential elements of a claim. *See* Tex.R. Civ. P. 166a(i); *RTLC,* 195 S.W.3d at 829. However, Batchelder does not expressly identify the elements of the claims for conversion, misappropriation and theft of funds, and violation of the Texas Theft Liability Act for which he asserts there is no evi-

dence. We construe Batchelder's general arguments described above as claims that there is no evidence to support: (1) the element of conversion requiring that the defendant unlawfully and without authorization assumed and exercised control over property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (2) the element of misappropriation and theft of funds requiring that the defendant intended to deprive the owner of the property; and (3) the element of the Texas Theft Liability Act requiring that the defendant unlawfully appropriated property. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 134.003 (Texas Theft Liability Act); TEX. PEN.CODE ANN. § 31.03 (theft); *Khorshid, Inc.*, 257 S.W.3d at 759 (listing elements of conversion).

In that light, and consistent with rule 166a(i), we review the summary judgment evidence. Texas Integrated offered Batchelder's deposition testimony demonstrating that Texas Integrated purchased for his use a laptop computer and he kept that laptop computer when he left Texas Integrated's employment. Further, Texas Integrated attached to its response a letter from Batchelder's counsel offering to return a utility cabinet and squeegee and pay $20 for metal desks. The letter denied the offer was an admission of guilt. Texas Integrated claimed this letter constituted an admission the property had been unlawfully taken as there otherwise would have been no need to return the property. In his affidavit, Mountain listed other property he claimed was owned by Texas Integrated, but had been misappropriated by the Terrys and Batchelder, i.e., one desktop PC, Xerox Desktop copier, desk, two guest chairs, three pieces of wall art, two executive chairs, a four-drawer filing cabinet, a two-shelf metal bookcase, a bandsaw, a hammer drill, a 3/8 drive drill, a ½ drive drill, a handheld grinder, a pedestal mounted grinder, an impact driver, a pedestal mounted drill press, two metal storage racks, a broom and dustpan, a laptop computer, a utility cabinet, and metal desks.

Additionally, other proffered deposition testimony of Batchelder described that during the course of his duties with Texas Integrated, he would hire cash laborers and submit an expense report. Then, American Conveyor Group would issue him a check for the specified amount and he would deposit the check in his account and pay the laborer in cash. In his affidavit, Mountain stated Texas Integrated "released funds as compensation or reimbursement to [the Terrys and Batchelder] for [the performance of] certain job duties they were supposed to be performing and for their compliance with all applicable policies and procedures of Texas Integrated including those contained in the employee handbook." Further, Mountain stated Texas Integrated

hire[d] cash laborers to perform certain task[s] for customers. At the end of the year, [Gregory Terry, Michael Terry, and Batchelder] were required to submit certain information regarding these individuals so that a 1099 could be issued for tax purposes. For every year, up until the end of 2003, the year the fraud began, [Gregory Terry, Michael Terry, and Batchelder] complied with this procedure. No such tax information was provided by [Gregory Terry, Michael Terry, and Batchelder's] expense reports for the years 2003 and 2004.... Each employee was responsible for making sure that the appropriate tax information was submitted to Texas Integrated....

Had Texas Integrated known about ... [Gregory Terry, Michael Terry, and Batchelder's] intent to refuse to supply appropriate 1099 tax information at the end of the 2003 year, Texas Integrated

would have never released any of the physical property and documents noted above, monies for compensation of job duties in 2003 and 2004, funds to pay for the expense reimbursements in 2003 and the beginning of 2004, to [Gregory Terry, Michael Terry, and Batchelder].

Viewing all of the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered and disregarding all contrary evidence and inferences, Texas Integrated produced more than a scintilla of evidence as to the disputed elements regarding conversion, misappropriation and theft of funds, and violations of the Texas Theft Liability Act. We conclude the trial court erred when it granted "traditional" summary judgment in favor of Batchelder as to the claims alleging conversion, misappropriation and theft of funds, and violations of the Texas Theft Liability Act. The portion of issue three in which Texas Integrated argues the trial court erred when it granted "traditional" summary judgment in favor of Batchelder as to those claims is decided in favor of Texas Integrated.

### 4. Fraud and Constructive Fraud

■ In his motion for "traditional" summary judgment, Batchelder argued he was entitled to summary judgment on Texas Integrated's fraud claim because the claim is "without factual support" and there is "no evidence" Batchelder did not intend to perform his employment duties. Texas Integrated responded Batchelder did not disclose to Texas Integrated, his employer, the existence of, or his working relationship with, Innovative Conveyor.

Batchelder does not expressly identify the elements of the claims for fraud and constructive fraud for which he asserts there is no evidence. *See* TEX.R. CIV. P. 166a(i). Nevertheless, Batchelder's argument appears to attack the element relating to intent, so we construe Batchelder's general arguments as a claim that there is no evidence to support the element of fraud requiring that: (1) the defendant had a duty to disclose and the nondisclosure was misleading as a positive misrepresentation of facts; or (2) when the representation was made, the speaker knew it was false or made the statement recklessly without any knowledge of the truth. *See Schlumberger*, 959 S.W.2d at 181 (discussing fraud by nondisclosure); *Formosa*, 960 S.W.2d at 47 (listing elements of fraud).

Batchelder testified during his deposition that, before he was "fired" from Texas Integrated in the summer of 2004, he performed some drafting work and manual labor for Innovative Conveyor in 2003. Also, Batchelder testified, although he was aware the Terrys had formed and were operating Innovative Conveyor, he did not disclose this information to Texas Integrated. Further, our review of the record reveals nothing showing Batchelder addressed the constructive fraud claim in his motion for summary judgment. *See Barnett*, 67 S.W.3d at 126 (discussing constructive fraud and that actor's intent is irrelevant).

Viewing all of the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered and disregarding all contrary evidence and inferences, Texas Integrated produced more than a scintilla of evidence as to the disputed element regarding fraud. We conclude the trial court erred when it granted "traditional" summary judgment in favor of Batchelder as to the claims alleging fraud and constructive fraud. The portion of issue three in which Texas Integrated argues the trial court erred when it granted "traditional" summary judgment in favor of Batchelder as to these claims is decided in favor of Texas Integrated.

## 5. Tortious Interference with Existing and Prospective Contracts

In his motion for "traditional" summary judgment, Batchelder argued he was entitled to summary judgment on Texas Integrated's: (1) tortious interference with existing contracts claim because there is "no evidence" Batchelder ever interfered with a contract or job; and (2) tortious interference with prospective contracts claim because "[n]o facts show independently tortious conduct" and Texas Integrated "has not produced any evidence to establish it suffered actual damage or loss." Texas Integrated responded that in his deposition, Batchelder identified common clients of Texas Integrated and Innovative Conveyor.

Batchelder does not expressly identify the elements of the claims for tortious interference with existing and prospective contracts for which he asserts there is no evidence. *See* Tex.R. Civ. P. 166a(i). Nevertheless, we construe Batchelder's general arguments as a claim that there is no evidence to support: (1) the element of tortious interference with existing contracts requiring a willful and intentional act of interference with a contract; and (2) the elements of tortious interference with prospective contracts requiring (a) an intentional, malicious intervention or an independently tortious or unlawful act performed by the defendant with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of his conduct, and (b) actual harm or damages suffered by the plaintiff as a result of the defendant's interference, i.e., the defendant's actions prevented the relationship from occurring. *See Prudential Ins.*, 29 S.W.3d at 77 (listing elements of tortious interference with existing contracts); *Tex. Disposal*, 219 S.W.3d at 590 (listing elements of tortious interference with prospective contracts).

During his deposition, Batchelder testified (1) he was an employee of Texas Integrated, (2) he is a current employee of Innovative Conveyor, and (3) Innovative Conveyor offers services and products similar to Texas Integrated. He stated that while working for Texas Integrated, he did business with the following companies that appear on Innovative Conveyor's customer list: ANS, Armstrong Wood Products, and Cardinal. Batchelder stated ANS and Armstrong Wood Products are his customers at Innovative Conveyor. Also, Batchelder testified Ecolab and WePack appeared on Innovative Conveyor's customer list and Innovative Conveyor's customers include "Xpedx [and] Cooper." In Mountain's affidavit, he listed all of these companies, with the exception of ANS, as customers or prospective customers of Texas Integrated. Mountain stated Texas Integrated relies on repeat business, which is an integral part of its business and necessary for its success. Also, with regard to damages, Mountain stated Texas Integrated was seeking $3,213,975, which was based on tax and other documents produced during discovery and reflects the income made by the defendants as result of their illegal actions. He also noted that many documents had not been produced in discovery, including Innovative Conveyor's job files, which may affect the damages sought.

Viewing all of the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered and disregarding all contrary evidence and inferences, Texas Integrated produced more than a scintilla of evidence as to the disputed elements regarding tortious interference with existing contracts and tortious interference with prospective contracts. We conclude the trial court

erred when it granted "traditional" summary judgment in favor of Batchelder as to the claims alleging tortious interference with existing contracts and tortious interference with prospective contracts. The portion of issue three in which Texas Integrated argues the trial court erred when it granted "traditional" summary judgment in favor of Batchelder as to those claims is decided in favor of Texas Integrated.

### 6. Civil Conspiracy

■ In his motion for "traditional" summary judgment, Batchelder argued he was entitled to summary judgment on Texas Integrated's civil conspiracy claim because there is "no evidence" of an underlying tort and Texas Integrated "has produced no evidence" of a meeting of the minds between Batchelder and another defendant. Texas Integrated responded that Batchelder admitted he worked for Innovative Conveyor while still employed by Texas Integrated and did not disclose this information to Texas Integrated.

Batchelder does not expressly identify the elements of the claim for civil conspiracy for which he asserts there is no evidence. *See* Tex.R. Civ. P. 166a(i). Nevertheless, we construe Batchelder's general arguments as a claim that there is no evidence to support the following elements of civil conspiracy: (1) a meeting of the minds on the object or course of action; and (2) one or more unlawful, overt acts. *See Denson*, 262 S.W.3d at 851 (listing elements of conspiracy).

Texas Integrated alleged Batchelder conspired against it to commit fraud, breach of fiduciary duty, theft, and the other allegations in the petition by planning, forming, operating, and contributing to the running of Innovative Conveyor while still employed by Texas Integrated. As to Batchelder's claim there is no evidence of an underlying tort, we have already concluded Batchelder was not entitled to summary judgment on Texas Integrated's claims for fraud, breach of fiduciary duty, misappropriation and theft of funds, conversion, and violations of the Texas Theft Liability Act.

As to Batchelder's claim there is no evidence of a meeting of the minds with Gregory and Michael Terry, Batchelder testified during his deposition that he performed some drafting work and manual labor for Innovative Conveyor while still employed with Texas Integrated. Also, he stated he did not tell anyone at American Conveyor Group or Texas Integrated about Gregory and Michael Terry's incorporation of Innovative Conveyor.

Viewing all of the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered and disregarding all contrary evidence and inferences, Texas Integrated produced more than a scintilla of evidence as to the disputed elements regarding civil conspiracy. We conclude the trial court erred when it granted "traditional" summary judgment in favor of Batchelder as to the claim alleging civil conspiracy. The portion of issue three in which Texas Integrated argues the trial court erred when it granted "traditional" summary judgment in favor of Batchelder as to this claim is decided in favor of Texas Integrated.

### 7. Unjust Enrichment

■ In his motion for "traditional" summary judgment, Batchelder argued he was entitled to summary judgment on Texas Integrated's unjust enrichment claim because Texas Integrated "produced no evidence" of any benefit Batchelder received as a result of the alleged fraud, duress, or undue advantage. Texas Integrated responded that Batchelder testified during his deposition he worked for Inno-

vative Conveyor while employed by Texas Integrated.

Batchelder does not expressly identify the elements of unjust enrichment for which he asserts there is no evidence. *See* Tex.R. Civ. P. 166a(i). Nevertheless, we construe Batchelder's general arguments as a claim that there is no evidence to support the following element of unjust enrichment: the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. *See Heldenfels Bros.*, 832 S.W.2d at 41 (discussing unjust enrichment); *Villarreal*, 136 S.W.3d at 270 (same).

During his deposition, Batchelder testified he was employed by Texas Integrated from 2002 through April 2004. He stated he received a 1099 as an independent contractor in 2002, but in 2003 and 2004, taxes were withheld and he received a W2. Also, he stated he received commissions for his sales in 2003. Further, Batchelder stated he performed some drafting work and manual labor for Innovative Conveyor while still employed with Texas Integrated. He stated he received cash compensation for this work usually at the hourly rate of $20/hour.

Viewing all of the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered and disregarding all contrary evidence and inferences, Texas Integrated produced more than a scintilla of evidence regarding the element of benefit. We conclude the trial court erred when it granted "traditional" summary judgment in favor of Batchelder as to the claim alleging unjust enrichment. The portion of issue three in which Texas Integrated argues the trial court erred when it granted "traditional" summary judgment in favor of Batchelder as to this claim is decided in favor of Texas Integrated.

### E. Innovative Conveyor's Motion for Traditional Summary Judgment

Innovative Conveyor sought traditional summary judgment on the claims of civil conspiracy and respondeat superior. According to Innovative Conveyor's motion, (1) it could not be a party to a perceived plan to form itself and compete with Texas Integrated, and (2) there is no evidence any employee of Innovative Conveyor committed or engaged in misconduct within the employee's general authority in furtherance of the employer's business and for the accomplishment of the objective for which the employee was hired.

Texas Integrated asserted in part in its claim for civil conspiracy in its fourth amended original petition "[d]efendants acts of planning, forming, operating, and contributing to the running of [Innovative Conveyor] while defendant former employees were still employed by [Texas Integrated] constitutes an unlawful purpose or a lawful purpose by unlawful means." In its response to the motions for summary judgment, Texas Integrated did not address Innovative Conveyor's argument that Innovative Conveyor could not be a party to a perceived plan to form itself and compete with Texas Integrated. Rather, Texas Integrated asserted only arguments regarding civil conspiracy by its former employees. In its brief before this Court, Texas Integrated asserts it is not arguing Innovative Conveyor conspired with itself, but rather that Innovative Conveyor should be held liable for the tortious actions of its employees.

As a general rule, a corporation cannot conspire with itself through its agents. *See Fojtik v. First Nat'l Bank of Beeville*, 752 S.W.2d 669, 673 (Tex. App.-Corpus Christi 1988), *writ denied*, 775 S.W.2d 632 (Tex.1989); *Christopher*

*v. Gen. Computer Sys.*, 560 S.W.2d 698, 709 (Tex.Civ.App.-Dallas 1977, writ ref'd n.r.e.). Texas Integrated asserts in its civil conspiracy claim in its fourth amended original petition that Innovative Conveyor conspired with the Terrys and Batchelder. Texas Integrated alleges elsewhere in the petition the Terrys and Batchelder were agents of Innovative Conveyor. In response to the motions for summary judgment and on appeal, Texas Integrated offers no argument in support of its civil conspiracy claim against Innovative Conveyor and identifies no supporting evidence or authority. Accordingly, we conclude the trial court did not err by granting summary judgment in favor of Innovative Conveyor with regard to Texas Integrated's civil conspiracy claim. The portion of issue three in which Texas Integrated argues the trial court erred when it granted traditional summary judgment in favor of Innovative Conveyor as to civil conspiracy is decided against Texas Integrated.

With regard to respondeat superior, we conclude Innovative Conveyor's motion for traditional summary judgment was in substance a motion for no-evidence summary judgment. *See* Tex.R. Civ. P. 166a(i). Therefore, as in the section above, we will review the motion under the standards that apply to a no-evidence motion. *See RTLC*, 195 S.W.3d at 833 (when reviewing no-evidence summary judgment, appellate court must review all evidence in light most favorable to party against whom no-evidence summary judgment was rendered and determine whether nonmovant produced any evidence of probative force to raise fact issue on material questions presented).

Texas Integrated asserted in relevant part in its fourth amended original petition that the Terrys and Batchelder "were officers, owners, employees and/or agents of Defendant Innovative Conveyor Concepts, Inc., and at all times alleged herein acted within the course and scope of their employment of Innovative Conveyor Concepts, Inc." In its response to the summary judgment motions, Texas Integrated argued in part "[i]t is not in dispute that the individual defendants while creating, forming and working for Innovative Conveyor were doing so either as owners, directors, employees or agents, and in the course of their employment with Innovative Conveyor." Texas Integrated cited deposition testimony of the Terrys and Batchelder, income tax returns of the Terrys, and articles of incorporation and by-laws of Innovative Conveyor. That evidence includes testimony by the Terrys and Batchelder acknowledging they were owners of or employed by Innovative Conveyor and performed various tasks directly related to establishing and furthering the business of Integrated Conveyor. Further, the record shows the individual defendants' alleged acts of "creating, forming and working for Innovative Conveyor" form the basis of Texas Integrated's tort claims against the Terrys and Batchelder in this case, and we concluded above traditional summary judgment was not proper as to those claims.

Under the doctrine of respondeat superior, a principal or employer may be vicariously liable for the tortious acts of an agent or employee if the acts are within the course and scope of employment. *See F.F.P. Operating Partners, L.P.*, 237 S.W.3d at 686; *Baptist Mem. Hosp. Sys.*, 969 S.W.2d at 947; *Ogg*, 239 S.W.3d at 418. Viewing all of the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered and disregarding all contrary evidence and inferences, Texas Integrated produced more than a scintilla of evidence to raise genuine issues of material fact as

to the claim against Innovative Conveyor regarding respondeat superior. *See RTLC,* 195 S.W.3d at 829. We conclude the trial court erred when it granted "traditional" summary judgment in favor of Innovative Conveyor as to that claim. The portion of issue three in which Texas Integrated argues the trial court erred when it granted "traditional" summary judgment in favor of Innovative Conveyor as to respondeat superior is decided in favor of Texas Integrated.

In addition to the claims for civil conspiracy and respondeat superior, Texas Integrated alleged claims against Innovative Conveyor in its fourth amended original petition for (1) aiding and abetting "in the commission of fraud, breach of fiduciary duties, theft, and other allegations made in [the] petition" and (2) unjust enrichment. The record shows Innovative Conveyor did not move for traditional summary judgment on Texas Integrated's claims against it for aiding and abetting "in the commission of fraud, breach of fiduciary duties, theft, and other allegations made in [the] petition" and unjust enrichment. Accordingly, we conclude the trial court erred when it granted traditional summary judgment in favor of Innovative Conveyor as to those claims. *See Wright,* 173 S.W.3d at 554 (trial court can enter summary judgment only on those claims attacked in motion for summary judgment). The portion of issue three in which Texas Integrated argues the trial court erred when it granted traditional summary judgment in favor of Innovative Conveyor as to the claims for aiding and abetting "in the commission of fraud, breach of fiduciary duties, theft, and other allegations made in [the] petition" and unjust enrichment is decided in Texas Integrated's favor.

## V. ORDER IMPOSING SANCTIONS

In issue five, Texas Integrated asserts the trial court abused its discretion by awarding discovery sanctions against Texas Integrated and, in the alternative, abused its discretion by denying Texas Integrated's motion to "reconsider and/or vacate" the order imposing sanctions. Texas Integrated argues the trial court erred when it imposed the sanctions at issue because (1) the judge who imposed the sanctions failed to establish a direct nexus among the offensive conduct, the offender, and the sanction imposed; (2) the sanctions were excessive and the trial court did not consider lesser sanctions; (3) there was no finding of reasonableness of the amount of attorneys' fees and monetary sanctions awarded; (4) Texas Rule of Civil Procedure 215.1(b) does not allow for sanctions for the reasons articulated by the judge who imposed the sanctions without first having an order compelling such discovery; and (5) the original corporate designation made by Texas Integrated complied with Texas Rule of Civil Procedure 199.2(b)(1). Further, Texas Integrated contends the trial court erred when it denied Texas Integrated's motion to reconsider the sanctions at issue because the trial judge who imposed those sanctions subsequently recused himself for alleged ex parte communications, which demonstrates partiality.

With regard to the order imposing sanctions, the Innovative Conveyor defendants respond, in relevant part, there was a nexus between Texas Integrated's conduct and the sanctions imposed because each sanction was aimed at a specific abuse of the discovery process, and the sanctions imposed were appropriate punishment for Texas Integrated's excessive pattern of abuse of that process. With regard to the motion to reconsider, the Innovative Conveyor defendants respond that motion was properly denied because (1) there was a direct relationship between the offensive conduct and the sanctions imposed and (2)

the sanctions were required to "satisfy the purposes of compliance, deterrence, and discourage further abuse."

### A. Standard of Review

An appellate court reviews a trial court's order imposing sanctions for an abuse of discretion. *See Darya, Inc. v. Christian,* 251 S.W.3d 227, 232 (Tex.App.-Dallas 2008, no pet.); *Law Offices of Windle Turley, P.C. v. French,* 164 S.W.3d 487, 490 (Tex. App.-Dallas 2005, no pet.). A trial court abuses its discretion if it acted without reference to any guiding rules and principles to the extent the act was arbitrary or unreasonable. *Darya,* 251 S.W.3d at 232. An appellate court reviews the entire record to determine whether the imposition of sanctions constitutes an abuse of discretion. *Darya,* 251 S.W.3d at 232; *Law Offices of Windle Turley,* 164 S.W.3d at 490–91. An appellate court may not substitute its judgment for that of the trial court. *Darya,* 251 S.W.3d at 232; *Law Offices of Windle Turley,* 164 S.W.3d at 491.

### B. Applicable Law

Discovery sanctions are authorized by Texas Rule of Civil Procedure 215. *See* Tex.R. Civ. P. 215. If a trial court finds a party is abusing the discovery process in seeking, making, or resisting discovery, then the trial court may, after notice and hearing, impose any appropriate sanction authorized by rule 215.2(b)(1)-(5) and (8). *Id.* § 215.3. Section 215.2(b)(2) permits a trial court to order a disobedient party or the attorney advising him to pay all or any portion of the expenses of discovery or taxable court costs or both. *See id.* § 215.2(b)(2). Section 215.2(b)(8) permits a trial court to require a party failing to obey an order or the attorney advising him, or both, to pay the reasonable expenses, including attorneys' fees, caused by the failure to obey the order. *See id.* § 215.2(b)(8).

Discovery sanctions serve three purposes: (1) to secure the parties' compliance with the discovery rules; (2) to deter other litigants from violating the discovery rules; and (3) to punish parties who violate the discovery rules. *Jones v. Am. Flood Research, Inc.,* 218 S.W.3d 929, 932 (Tex.App.-Dallas 2007, no pet.) (citing *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992)); *Davenport v. Scheble,* 201 S.W.3d 188, 194 (Tex.App.-Dallas 2006, pet. denied). Although the choice of sanction is left to the sound discretion of the trial judge, the sanctions imposed must be just. *See Jones,* 218 S.W.3d at 932 (citing *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 916 (Tex.1991)); *Davenport,* 201 S.W.3d at 194; Tex.R. Civ. P. 215.2. Whether an imposition of sanctions is just is measured by two standards. *TransAmerican,* 811 S.W.2d at 917. First, a direct relationship must exist between the offensive conduct and the sanction imposed. *Id.* Second, the sanction must not be excessive. *Id.* "A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that a court must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *Id.; see also Jones,* 218 S.W.3d at 932; *Davenport,* 201 S.W.3d at 194.

### C. Application of the Law to the Facts

At the conclusion of the hearing on sanctions, the trial judge of the 101st District Court orally rendered an order that, in part, concluded Texas Integrated shall pay as sanctions attorneys' fees of $5000 to the Innovative Conveyor defendants. Subsequently, on June 26, 2007, the 101st District Court signed an order finding that Texas Integrated had engaged

in a pattern of discovery abuse, without detailing any specific abuse or stating any relationship between any abuse and the sanctions imposed, which were: (1) all of Texas Integrated's objections to interrogatories and requests for production, with the exception of its objections for attorney-client privilege and work product, were stricken; (2) Texas Integrated was ordered to amend or supplement all answers and produce all documents responsive to the interrogatories and requests for production, and to file its privilege log by July 2, 2007; (3) Texas Integrated was ordered to pay the expenses associated with copying and producing those documents; (4) any documents not produced by July 2, 2007, would not be admitted into evidence without a showing of good cause for the failure to produce; (5) Texas Integrated was ordered to pay the court reporting costs for the May 31, 2007 deposition of its corporate representative in the amount of $2976.40; (6) Texas Integrated was found to have engaged in a pattern of abuse of the discovery process and ordered to pay $5000 in attorneys' fees to the Innovative Conveyor defendants; (7) the Innovative Conveyor defendants were awarded six additional hours to complete the deposition of Texas Integrated's corporate representative; and (8) Texas Integrated was ordered to designate the most knowledgeable witnesses as to each topic requested by the Innovative Conveyor defendants. On October 10, 2007, Texas Integrated filed its second motion seeking the recusal of the trial judge for the 101st District Court because of alleged ex parte communications with counsel for the Innovative Conveyor defendants and reliance on extrajudicial sources to formulate detrimental opinions as to the merits of Texas Integrated's claims. On October 11, 2007, the trial judge for the 101st District Court, after considering Texas Integrated's motion, recused himself from the case. Texas Integrated filed an October 23, 2007 motion to reconsider or vacate the order imposing sanctions. On December 12, 2007, the 160th District Court denied the motion to reconsider.

Texas Integrated argues the sanctions imposed by the trial court "were excessive, especially given the fact that this was the first discovery hearing in the case, and no lesser sanctions were even considered." According to Texas Integrated, "[a] less harsh remedy would have simply been to overrule any objections deemed lacking merit, and to order a supplementation of any deficiencies." The trial court's sanctions order is silent as to the improper conduct found by the trial court to constitute abusive discovery. The reporter's record of the hearing shows only a general statement by the trial court regarding the basis for the sanctions. The record does not show the trial court considered the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance. *See Jones,* 218 S.W.3d at 932 (order for monetary sanction reversed where, among other considerations, record did not reflect trial court considered lesser sanctions and whether they would promote compliance). Without considering the merits of the sanctions at issue, we conclude, on this record, the trial court abused its discretion by imposing sanctions pursuant to the June 26, 2007 order. *See id.* at 933. In light of that conclusion, we need not consider whether the trial court erred when it denied Texas Integrated's motion to reconsider or vacate the order imposing sanctions. Issue five is decided in favor of Texas Integrated.

## VI. CONCLUSION

We conclude the trial court erred when it denied Texas Integrated's motion for new trial as to the Innovative Conveyor defendants' motions for no-evidence sum-

mary judgment because Texas Integrated was denied due process as to those motions. Additionally, we conclude the trial court did not err in granting the motion of Innovative Conveyor for traditional summary judgment as to the claim of civil conspiracy against it, but erred in granting the motions of the Integrated Conveyor defendants for traditional summary judgment as to all other claims. Finally, we conclude the trial court abused its discretion when it imposed the discovery sanctions at issue against Texas Integrated.

We affirm the portion of the trial court's judgment granting Innovative Conveyor's motion for traditional summary judgment as to the claim of civil conspiracy and reverse in all other respects the trial court's judgment granting the Innovative Conveyor defendants' motions for traditional and no-evidence summary judgment. In addition, we vacate the trial court's June 26, 2007 order imposing sanctions against Texas Integrated. This case is remanded to the trial court for further proceedings consistent with this opinion.