**Affirmed; Opinion Filed October 16, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

### No. 05-18-01334-CV

---

### EZI NNABUGWU, Appellant
### V.
### CHUMA COS-OKPALLA, LEONARD NWONUMAH, ANDERSON OBIAGWU, KINGSLEY NWASURUBA, AND BONNY UWAKWEH, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF ENYIMBA SOCIAL CLUB U.S.A., INC., Appellees

---

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-12053**

---

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Myers

Ezi Nnabugwu brings this appeal from the trial court's judgment in favor of Chuma Cos-Okpalla, Leonard Nwonumah, Anderson Obiagwu, Kingsley Nwasuruba, and Bonny Uwakweh, individually and derivatively on behalf of Enyimba Social Club U.S.A., Inc. The trial court awarded appellees $30,000 in actual damages, $10,000 for exemplary damages, and attorney's fees. The trial court also ordered appellant to turn over a trademark he had applied for on behalf of Enyimba Social Club, and the court enjoined appellant from conduct that interfered with the club. Appellant brings five issues on appeal contending the trial court abused its discretion by (1) awarding actual damages of $30,000, (2) awarding exemplary damages of $10,000, (3) awarding

attorney's fees through trial of $21,075, (4) ordering appellant to turn over the trademark to the club, and (5) granting the permanent injunction against him. We affirm the trial court's judgment.

## BACKGROUND

Enyimba Social Club is a for-profit Texas corporation organized as a social club for the purpose of aiding people from the city of Aba in Nigeria by bringing them together, providing social events and gatherings, and to "support them in times of brotherhood." In 2014, the club had chapters in Dallas, Austin, Houston, Atlanta, and Chicago.

The club is governed by its National Executive Council (NEC), which the club's constitution states is the "decision making body of the club." The NEC consists of members selected by each chapter with the number of members from a chapter proportionate to the size of the chapter. The officers of the NEC include the president, vice-president, secretary, treasurer, and public relations officer. The president is the club's principal officer. He is a signatory to the club's bank accounts and approves the disbursement of the club's funds. The constitution provides that the president has "the power to authorize expenses up to $500.00 annually without consulting cabinet members." Amounts "in excess of $500.00 shall require 2/3 approval of NEC members." The officers are elected at the club's national convention held every three years. The terms of the current NEC officers end at the beginning of the convention, and the officers elected during the convention are sworn in. Only members of the NEC may vote in the election of the NEC officers.

Although the NEC is the club's decision-making body, the constitution gives the club's general assembly "the sole right to reject or reverse any enactment, decision, report or recommendation of NEC."

The club also has a board of directors consisting of one member from each chapter. The constitution provides that the board's functions include acting "as the co-coordinating authority on Enyimba affairs," supporting the NEC and reviewing its performance, approving the budget for

NEC events, and undertaking studies and researching the urgency of matters brought to its attention by the chapters or the NEC. The board's members also conduct the club's election of the NEC officers.

This case concerns the events and their aftermath at the club's national convention on July 12, 2014. Appellant, who was from the club's Austin chapter, was the NEC president before the convention, and his term and the term of the other NEC officers ended as the convention began. Appellant was running for re-election as president against Victor Okereke from the Houston chapter. When the votes were tallied, the secretary of the board of directors announced appellant had twelve votes and Okereke had eleven. Appellees Cos-Okpalla, Nwonumah, and Nwasuruba, who were from the Houston and Dallas chapters, questioned whether one of the voters from the Austin chapter, Godfery Emeribe, was a member of the NEC. The board's secretary, who also was from the Austin chapter, stated that Emeribe was an NEC member. When Emeribe was asked whether he was a member of the NEC, he admitted he was not but stated he was voting on behalf of an NEC member who had to leave the convention. The constitution states, "No member shall be allowed to vote or be voted for in absentia." After Emeribe admitted he was not an NEC member, the general assembly decided that the presidential election would be canceled. The general assembly determined that the newly elected vice-president would be acting president until a new presidential election could be held, and the assembly gave him and the NEC thirty days to come up with a plan for electing a president.[1] The newly elected officers were sworn in that night.

Six days later, appellant sent a letter to the board of directors stating the board should not go to the expense of holding a new election but should declare him to be the winner of the election at the convention. Appellant also sent letters to the officers stating he was president and that all

_____

[1] The minutes of the convention state the general assembly gave the interim president and the NEC thirty days to come up with a plan for the election. Witnesses testified that the general assembly required the NEC to hold the election within thirty days.

decisions had to be routed through him. Appellant closed one of the club's bank accounts and moved the money to another bank. Testimony about the amount of money appellant moved varied from $20,000 to $28,000.

The NEC held the second presidential election on September 19, 2014. Appellant did not attend, and Okereke was elected and sworn in as president of the club.

After these events, there was a split in the club. Some members recognized appellant as president and followed him as he set up a separate governing body for the club, and others stayed with the officers elected at the convention and with Okereke as president. Although the club already had a website, appellant created another website in the club's name that stated he was the president.[2]

Appellant then hired a lawyer, who filed suit in October 2014 in the club's name against appellees in their individual capacities. The suit alleged appellees had filed false statements with the Texas Secretary of State identifying the club's registered agent and board of directors. Amongst other claims, the suit sought a declaratory judgment that appellees had no authority to act on behalf of Enyimba Social Club.

The next year, appellant's lawyers sent cease-and-desist letters to the Dallas and Houston chapters to stop using the club's name and logo. Appellees then filed suit against appellant alleging his term as president ended on July 12, 2014 and that he refused to turn over the club's assets. Appellees sought declaratory judgments that appellant was not president, that Okereke was president, and that appellant lacked authority to act on the club's behalf. They also brought causes of action for conversion, money had and received, and breach of fiduciary duty for appellant's

---

[2] The only difference in the website names was the suffix: Enyimba Social Club's website ended with ".org" while appellant's website ended with ".com."

closing the club's bank account, moving the money to another bank, and refusing to provide an accounting for the funds. They also sought injunctive relief and attorney's fees.

Before trial, appellant nonsuited the claims he brought in the club's name against appellees.

The case was tried before the court. The court rendered judgment for appellees awarding them $30,000 for actual damages, $10,000 for exemplary damages, $21,075 for attorney's fees through trial, and additional amounts for appellate attorney's fees. The trial court did not make any declaratory judgments.

## STANDARD OF REVIEW

Appellant's issues contend the evidence is legally and factually insufficient to support the trial court's judgment.

In his arguments, appellant complains that the trial court did not file findings of fact and conclusions of law. Appellant timely requested findings of fact and conclusions of law, but the trial court did not file them. To preserve his request for findings of fact and conclusions of law, appellant had to file notice of past due findings of fact and conclusions of law within thirty days of the original request. *See* TEX. R. CIV. P. 297. Appellant did not do so. Accordingly, he waived any complaint that the trial court did not file findings of fact and conclusions of law. *In re W.C.B.*, 337 S.W.3d 510, 513 n.2 (Tex. App.—Dallas 2011, no pet.).

When no findings of fact and conclusions of law were properly requested or filed, it is implied that the trial court made all findings necessary to support its judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.). The judgment will be upheld on any legal theory that finds support in the evidence. *Niskar*, 136 S.W.3d at 754.

We review the implied findings of fact for legal and factual sufficiency, and we review the trial court's implied legal conclusions de novo. *In re M.P.B.*, 257 S.W.3d 804, 808 (Tex. App.—

Dallas 2008, no pet.). When addressing a legal sufficiency challenge, we view the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). In a factual sufficiency review, we view all the evidence in a neutral light and set aside the finding only if the finding is so contrary to the overwhelming weight of the evidence such that the finding is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 842 (Tex. App.—Dallas 2011, no pet.).

**DAMAGES**

In his first issue, appellant contends the trial court abused its discretion by awarding appellees actual damages of $30,000. Appellant argues the trial court should not have awarded appellees any damages because the board of directors directed him to move the club's money to another bank and spend the money on the attorney's fees and expenses for bringing this lawsuit. Appellant argues that his actions benefitted the club. The parties presented two different versions of what happened.

Under appellees' version, appellant was not president after his term ended at the beginning of the convention. The presidential election at the convention was voided by the general assembly because of the illegal vote cast by Emeribe, and the vote for the president was postponed. Cos-Okpalla testified that people from the Austin chapter said Emeribe voted the same way the absent member would have voted; however, Cos-Okpalla said the vote was by secret ballot, so there was no way to know how Emeribe voted or how the absent member would have voted. When the second election was held on September 19, appellant was not elected president. Therefore,

although appellant was a member of the NEC, he was not an officer, and he had no authority to access the club's bank account or to spend the club's money.

The NEC sent appellant a letter demanding that he return the money, but he refused, stating he had closed the account at the behest of the board of directors and that he had turned the money over to the board. Cos-Okpalla testified he did not know what appellant had done with the money, but he had heard appellant had spent all the money on attorneys and litigation expenses. Appellant set up a parallel governing structure within the club with himself as president. He set up a parallel website using the club's name. He also obtained a federal registered trademark for the name "Enyimba Social Club U.S.A., Inc." and its logo. Appellant hired lawyers using the club's money to send cease-and-desist letters to the Houston and Dallas chapters telling them they were violating the club's trademark by using the club's name and logo. The constitution has provisions for terminating chapters, but appellant did not follow them.[3] It was members of the Dallas and Houston chapters that had raised the issue of the illegal vote at the convention that prevented appellant from being recognized as president. Appellant used the money in the bank account to pay the lawyers and expenses of bringing the litigation, the cease-and-desist letters, obtaining the trademark and for paying for the creation of the new website. Appellant did not have the NEC's approval to make these expenditures as required by the constitution. The NEC asked appellant to return the money, but he refused. Cos-Okpalla testified that the board of directors has an advisory role to the NEC and that the board does not have authority to write checks or sign contracts on the club's behalf. Before trial, appellant nonsuited the claims he brought in the club's name. Cos-Okpalla testified that appellant's actions did not benefit the club.

---

[3] The constitution states that a chapter that has not paid its membership dues "shall be terminated." For a chapter to be terminated, the NEC must send a registered letter to the chapter explaining that the chapter would be terminated and stating the chapter would have forty-five days to respond.

Under appellant's version, the club was in legal trouble before the convention because of false documents filed with the Texas Secretary of State. Appellant said these documents did not correctly list the club's registered agent or its board of directors. Chukwuma Enyinna, the former chairman of the board of directors, testified for appellant, stating that the club had become a "loose corporation" and was in danger of collapsing.

Appellant testified that before the election, the club was split concerning the requirements for being a member of the board of directors or an officer of the NEC. A recent change to the constitution required members of the board or the NEC officers to have at least a degree from a four-year college. According to appellant, this requirement created a split in the club when the club required candidates to prove they had the required degree.

Appellant testified that he was elected president at the convention, winning by one vote. Appellant then left the convention thinking he had won the election. Enyinna testified that when the issue of Emeribe's illegal vote was raised, Emeribe said he voted for Okereke and not appellant. Enyinna also testified that the president of a club chapter could permit a person who was not a member of the NEC to vote for an absent NEC member even though the constitution appeared to prohibit that practice. Enyinna said no second election took place: "[T]here was not a true election. It was just action. People acting in concert." Appellant testified the second election was not valid because the chairman, vice-chairman, and secretary of the board of directors were not present.

Enyinna testified that on July 19, a week after the convention, the board of directors met and decided to certify appellant as the president instead of holding an election. At that same board meeting on July 19, the board was concerned that there might be an attempt to hijack the club's account. Appellant was a signatory on the club's account, so the board asked him to close the account and move the money to another bank. Appellant testified that the board instructed him to

send cease-and-desist letters to the people falsifying the documents filed with the secretary of state and to bring suit against them if necessary. Enyinna testified the board of directors could direct the spending of the money even though the constitution required a two-thirds vote of the NEC for expenditures greater than $500. According to Enyinna, the NEC president and general secretary waived the two-thirds-of-the-NEC requirement and gave the board of directors authority to spend the money because it was an urgent matter.[4] Appellant testified he moved the bank account into an account to which only he and the board of directors had access. He testified he spent the money in obedience to the board's instructions. He testified he brought the lawsuit against appellees for the following reason:

> because we wanted to get all these things straightened out that is going on. I didn't want to have any faction with anybody with the organization. I didn't want to have any faction. It was divided. It was my aim and purpose of filing the lawsuit for them to stop so that we cannot going beyond doing the things the way we're supposed to.

Appellant also testified that although he is president of the NEC, he has not attended a national event or NEC meeting since the 2014 convention. Appellant testified his life would be in danger if he attended those events.

Appellant also testified he obtained the trademark for the club and not for himself. He told the court that all of his actions were to benefit the club.

---

[4] Enyinna's testimony on this matter is as follows:

Q. . . . Where does it say the board can give the approval?

A. The board override that constitution based on a special assignment to them.

Q. Special assignment by who?

A. By the national executive council president and the general secretary of the national executive council.

Q. Okay. Now your testimony is that the NEC gave—override the two-third requirement that is required before you can spend over $500?

A. Absolutely, because of urgent certain matter.

Q. Okay. When—when did they do that?

A. They did that in a special meeting.

**Actual Damages**

Appellant contends the evidence was legally and factually insufficient to support awarding appellees any damages. One of appellees' causes of action against appellant was conversion. Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 447 (Tex. 1971); *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 365 (Tex. App.—Dallas 2009, pet. denied). To establish a claim for conversion, a plaintiff must prove that: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded the return of the property; and (4) the defendant refused to return the property. *Tex. Integrated Conveyor Concepts*, 300 S.W.3d at 366.

Appellant admitted he took possession of the funds when he testified that he moved the funds to another bank account where only he and the board of directors had access. The trial court could conclude appellant's spending the funds was unauthorized for two reasons: first, he was not president of the club and therefore had no authority to move or spend the money, and second, the constitution required a two-thirds approval of the NEC for spending more than $500 per year. Although appellant testified the board of directors certified he was president the week after the election and that there was no second election, that evidence was contrary to the evidence that a second election was held and appellant was not elected. The trial court was not required to believe appellant's and Enyinna's testimony that the board of directors could override the constitution and direct the spending of over $20,000 of the club's money without the NEC's approval. Cos-Okpalla testified the board of directors had no authority to act on the club's behalf. The trial court could

find that appellant's moving the money to an account where only he and the board had access and then spending the money without the NEC's approval was an act inconsistent with the club's right to the money. The trial court could also find that appellant, as past-president of the club, was aware of the limitations on the president and the board of directors to spend the club's money without the NEC's approval. Cos-Okpalla testified the NEC demanded appellant return the money and that appellant refused. We conclude the evidence supports implied findings that appellant committed the tort of conversion.

The evidence is legally sufficient to support the trial court's decision to award actual damages to appellees. Viewing the evidence in a neutral light, we conclude the evidence is factually sufficient because the implied findings in favor of the judgment are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.[5] We overrule appellant's first issue.

### Exemplary Damages

In his second issue, appellant contends the evidence was legally and factually insufficient to support the trial court's award of exemplary damages. Exemplary damages may be awarded "only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a). "'Malice' means a specific intent by the defendant to cause substantial injury or harm to the claimant." *Id.* § 41.001(7). "'Clear and convincing' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 41.001(2).

---

[5] Appellant does not assert on appeal that the amount of actual damages awarded, $30,000, was excessive.

Appellant argues there was insufficient evidence to prove he acted with malice. Appellant asserts, "A review of the entire record reflects that the evidence introduced at trial actually negated Appellees' assertion that [appellant] acted with specific intent to cause Enyimba substantial injury or harm."

Besides the evidence appellant cites, which is his own and Enyinna's testimony, appellees presented contrary evidence. Evidence showed appellant's previous term as president ended at the beginning of the convention, and appellant's election at the convention was rejected by the general assembly due to Emeribe's illegal vote. The general assembly decided the presidential election should be delayed, which later resulted in the election of Okereke as president. Appellant rejected that decision, and he continued to insist he was president. In the guise of being president, he closed a bank account containing at least $20,000 and moved the money to a bank account where only he and the board of directors had access. According to the constitution, only the NEC president, vice-president, and treasurer may access the club's bank account. Appellant then spent over $20,000 on lawyer's fees and litigation and website expenses without the NEC's approval.

Appellant spent some of the money on lawyers to send cease-and-desist letters to the Dallas and Houston chapters for using the club's name and logo. Evidence shows appellant tried to rescind their membership in the club, which he lacked authority to do. The people who raised the problem of the legality of the vote at the convention were three of the appellees from the Houston and Dallas chapters, and the court could conclude appellant's attempts to expel those chapters were to punish and harass appellees and the other members of those chapters for interfering with his election and to eliminate opposition to his presidency.

Appellant testified his actions were only to help the club and that the board of directors authorized him to bring suit against appellees for filing false documents with the secretary of state. However, the court could find that appellant was not the president or any other officer. Even if he

were president, he did not have authority to spend the club's money without the approval of two-thirds of the NEC, which he knew he did not have. Appellant's unauthorized spending of the club's money deprived the club of those funds.

Appellant and Enyinna testified the board of directors had authority to declare appellant president. However, their testimony was contrary to the club's constitution and the actions of the general assembly at the convention. The minutes from the convention showed the general assembly required a new election, not a declaration from the board of directors affirming the vote at the convention. The minutes also stated that the general assembly gave the NEC and the interim president (the newly elected vice-president) "30 days or more to plan for a new Presidential Election."[6] If the board of directors had the authority to declare appellant president, there would have been no need for the second election. Yet the evidence shows that election took place, and appellant was not elected.

The trial court could determine from the evidence that appellant took the club's money and used it without the NEC's approval for his personal purposes of purging the club of the chapters whose members, including three of the appellees, objected to Emeribe's illegal vote at the convention. He then used the money without the NEC's approval to set up a parallel governance structure within the club with himself as president. The trial court could conclude appellant intended to cause substantial harm to appellees and the club by taking the club's money and using it to support his illegitimate claim of being president.

We conclude there is sufficient clear and convincing evidence of appellant's malice to support the award of exemplary damages, and appellant has not shown the trial court abused its discretion by awarding appellees exemplary damages. We overrule appellant's second issue.

_____

[6] Appellant testified that the minutes were forged. However, the minutes are signed by the interim president and the secretary. The trial court was the judge of appellant's credibility and was not required to believe his testimony.

## ATTORNEY'S FEES

In his third issue, appellant contends the trial court abused its discretion by awarding appellees their attorney's fees through trial of $21,074. In his appellant's brief, appellant contends the evidence did not support the trial court's implied finding that the fees awarded were reasonable and necessary.[7]

In *Arthur Anderson & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812 (Tex. 1997), the Texas Supreme Court set forth a list of factors to be considered when determining the reasonableness of attorney's fees:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 818. It is not necessary for the record to include evidence of all the factors. *Brockie v. Webb*, 244 S.W.3d 905, 909 (Tex. App.—Dallas 2008, pet. denied).

During the trial, the court admitted into evidence appellees' counsel's invoice for attorney's fees. The invoice identified the attorney performing the work and the date of the work, described

---

[7] In his reply brief, appellant contends there was no statutory or contractual basis for the award of attorney's fees. Appellant did not raise this argument in his appellant's brief, nor did he raise it in the trial court. Accordingly, we conclude this issue has been waived and is not properly before the Court. *See Compton v. Port Arthur Indep. Sch. Dist.*, No. 09-15-00321-CV, 2017 WL 3081092, at *9 (Tex. App.—Beaumont 2017, no pet.) (mem. op.) (argument that fees were not segregated could not be raised for first time in reply brief); *see also Collin Cty. v. Hixon Family P'ship, Ltd.*, 365 S.W.3d 860, 877 (Tex. App.—Dallas 2012, pet. denied) ("A reply brief may not be used to raise new issues.").

the task performed, and listed the billing rate, the number of hours for each task, and the total charge for each task. The invoice was for $21,075. Appellees' counsel testified:

> I was hired in this case and been in this case since January of 2015. I've been licensed and practiced law for 14 years now. And this is the kind of cases that I normally handle. My hourly rate is $300 per hour. As of today, I've calculated a total of $21,075 in attorney's fees; that's the equivalent of 70.3 hours of work. And my fee is very reasonable based on the nature of this case and also my experience.

The trial court offered appellant the opportunity to cross-examine appellees' counsel, but appellant asked him no questions.

The evidence in the entire case as well as the invoice and counsel's testimony provided evidence of the time and labor involved (factor 1), the amount involved and the results obtained (factor 3), the nature and length of the professional relationship with the client (factor 6), the lawyer's experience (factor 7), and that the fee was fixed (factor 8). Appellant does not identify any task appellees' counsel performed that was not necessary or for which the fee was not reasonable.

We conclude the evidence is legally and factually sufficient to support the award of $21,075 for attorney's fees through trial. We overrule appellant's third issue.

## TRADEMARK

In his fourth issue, appellant contends the trial court abused its discretion by requiring appellant to turn over the trademark he received on behalf of the club. Appellant asserts the trial court's determination should be reviewed for an abuse of discretion. The trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, that is, whether it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Appellant argues he was the president of the club when he applied for the trademark. He testified he paid $1,381.86 from the club's account to an attorney to obtain the trademark.

Appellant testified he obtained the trademark to preserve the name "Enyimba Social Club" and to stop other organizations from using the name and logo.

The trial court could determine from the evidence that appellant was not president and had no authority to obtain the trademark on the club's behalf, to spend the club's money to obtain the trademark, or to retain possession of the trademark. The court could also determine appellant did not use the trademark to protect the club but instead used it to harass and punish appellees for questioning the legality of Emeribe's vote in the presidential election at the convention. Appellant does not explain how requiring the trademark to be turned over to appellees, at least one of whom is an NEC officer, was an abuse of discretion.

We conclude appellant has not shown the trial court abused its discretion by requiring appellant to turn over the trademark. We overrule appellant's fourth issue.

## INJUNCTION

In his fifth issue, appellant contends the trial court abused its discretion by granting appellees' request for a permanent injunction. *See S. Plains Switching, Ltd. Co. v. BNSF Ry. Co.*, 255 S.W.3d 690, 703 (Tex. App.—Amarillo 2008, pet. denied) (standard of review of permanent injunction is abuse of discretion). The judgment enjoins appellant from filing documents on the club's behalf, representing himself to be the club's agent or representative, binding the club to a contract, accessing or spending the club's funds, and using the club's name or likeness.

Appellant argues the judgment imposing the permanent injunction is inadequate because the judgment does not contain the trial court's reasons for the injunction. *See* TEX. R. CIV. P. 683 ("Every order granting an injunction . . . shall set forth the reasons for its issuance . . . ."). Although a temporary restraining order or temporary injunction must set forth the reasons for the issuance of the injunction, this Court has held a final judgment does not have to set forth the reasons for a

permanent injunction. *See Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 891–92 (Tex. App.—Dallas 2004, pet. denied).

Appellant also argues the trial court granted more relief than appellees sought in their petition. Appellees' petition against appellant seeking injunctive relief incorporated the facts and causes of action set forth in the petition. Appellees then alleged that they "seek permanent injunctive relief against [appellant] because his conduct will cause irreparable harm for which there is no adequate remedy at law." Appellant did not specially except to the pleading. The pleading was sufficient to place appellant on notice that appellees sought injunctive relief based on the preceding facts and causes of action. Any deficiency in this pleading was waived by appellant's failure to file special exceptions. *See* Tex. R. Civ. P. 90 ("Every defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by exception in writing . . . shall be deemed to have been waived by the party seeking reversal on such account . . . .").

We conclude appellant has not shown the trial court abused its discretion by granting a permanent injunction against appellant. We overrule appellant's fifth issue.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

181334F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

Ezi Nnabugwu, Appellant

No. 05-18-01334-CV      V.

Chuma Cos-Okpalla, Leonard Nwonumah, Anderson Obiagwu, Kingsley Nwasuruba, and Bonny Uwakweh, Individually and Derivatively on Behalf of Enyimba Social Club U.S.A., Inc., Appellees

On Appeal from the 101st Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-14-12053.
Opinion delivered by Justice Myers.
Justices Osborne and Nowell participating.

       In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

       It is **ORDERED** that appellees Chuma Cos-Okpalla, Leonard Nwonumah, Anderson Obiagwu, Kingsley Nwasuruba, and Bonny Uwakweh, Individually and Derivatively on Behalf of Enyimba Social Club U.S.A., Inc. recover their costs of this appeal from appellant Ezi Nnabugwu.


Judgment entered this 16th day of October, 2019.